Argued and submitted August 22, reversed and remanded
for trial October 13, reconsideration denied November 25,
petition for review denied December 16, 1980 (290 Or 249),
cert den 450 US 1042 (1981)

STATE OF OREGON,
*Appellant,*

*v.*

LINUS J. NIEDERMEYER,
*Respondent.*

(No. J 8225, CA 17574)

617 P2d 911

James M. Mountain, Jr., Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefwere James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

William V. Bierek, Portland, argued the cause for respondent. With him on the brief was Dana R. Taylor, Portland.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

THORNTON, J.

## THORNTON, J.

Defendant was charged by Uniform Traffic Citation Complaint with fleeing or attempting to elude a police officer. ORS 487.555.[1]

The trial court, on pretrial motion of defendant, dismissed the citation on the ground that the arrest was the fruit of an illegal search and seizure. The state appeals, assigning as error the following pretrial orders of the trial court:

1) Ordering dismissal of the citation, and

2) Ordering that all evidentiary fruits of the search be suppressed.

The facts which led up to the filing of this charge against defendant are somewhat complicated.

On March 4, 1979, Oregon State Policemen Boatwright and Richey were patrolling Interstate Highway I-5 in a marked car. At 2:54 a.m., they saw a red Audi Fox automobile, Oregon License No. EKR 090, enter I-5 at the Terwilliger on-ramp at a high rate of speed. The officers followed the Audi as it traveled I-5 and I-405 at speeds up to 78 miles per hour in a 50 mph zone.

The police turned on the overhead lights of their car and signaled the driver of the Audi to stop. The driver did not stop immediately. He slowed his vehicle, took the Highway 30 exit at the end of the Fremont Bridge, drove on Vaughn Street, turned at

---

[1]

"(1) A driver of a motor vehicle commits the crime of fleeing or attempting to elude a police officer if, when given visual or audible signal to bring the vehicle to a stop, he knowingly flees or attempts to elude a pursuing police officer.

"(2) The signal given by the police officer may be by hand, voice, emergency light or siren.

"(3) As used in this section, 'police officer' means a sheriff, municipal policeman or member of the Oregon State Police in uniform, prominently displaying his badge of office or who is operating a vehicle appropriately marked showing it to be an official police vehicle.

"(4) Fleeing or attempting to elude a police officer is a Class A misdemeanor." ORS 487.555.

N. W. 21st Avenue, and pulled into a parking space. After parking his vehicle behind the Audi, Trooper Boatwright approached the car while shining his flashlight on the face of the driver, who had opened the driver's side door.

The Audi driver, whom Boatwright later identified as defendant, closed his car door as the officers approached, and he sped off. The officers attempted to follow defendant's car, but they were unable to catch up to it. They called in a report of the incident, a description of the driver, and the Audi's license number to their dispatcher.

At 3:05, Lake Oswego Police Officer Reed was advised by his dispatcher that a red Audi had eluded the Oregon State Police in Portland and had been involved in a shooting in Washington Park. Reed was told the car was registered to someone named Niedermeyer who resided in Lake Oswego at 2801 South Shore Boulevard, and that two suspects were involved. Accompanied by Officer Grant in a second car, Officer Reed immediately went to defendant's address, which he staked out when it appeared no one was home.

At 4:08 a.m., about an hour after Reed and Grant began their watch at defendant's house, they saw a red Audi being driven on South Shore, onto defendant's driveway and into the garage. Reed pulled his vehicle into the driveway. He saw defendant jump out of his car. No passenger was observed in the vehicle. The officer called for defendant to stop, but he ran into the house. Reed stopped in the dark, opened doorway to wait for cover from Officer Grant.

Approximately two minutes later, defendant came down a stairway in his undershorts and asked what was going on. Defendant was told to lie down on the floor. After a third officer arrived to take charge of defendant, Officers Reed and Grant went through the house looking for other people and a weapon. In an upstairs bedroom they saw defendant's clothing and car keys in open view. The officers found no weapon when they looked through dresser drawers. They

forced open the door to one bedroom which was apparently bolted from the inside, but found no one. However, in another bedroom, Reed and Grant found Scott Niedermeyer, defendant's brother.

After the defendant was advised of his rights, he refused to answer questions about his driving or any firearm. Officer Reed forcibly seated the defendant when he raised a fist at the officer. Defendant's brother Scott said a blank pistol had been used but a friend had possession of the gun. In the backseat area of defendant's car, Officers Grant and Reed saw an empty .22 caliber shell box and shell casings.

At 4:34 a.m., State Troopers Boatwright and Richey arrived at defendant's home to which they had been dispatched. After Officer Boatwright identified the Audi as the car which had eluded him, and the defendant as the driver of the car, he issued the defendant a citation for attempting to elude. The defendant was not taken into custody.

Prior to his trial on the attempting to elude charge, the defendant filed a motion to "suppress" the issuance of the citation on the ground issuance was the result of an illegal and unconstitutional search and arrest of defendant. In the motion he also asked for dismissal.

The trial court found the facts to be the same in all particulars as set forth above.

As to the first question, whether the district court had authority to dismiss the citation, we conclude that it did not.

As we understand the dismissal order, the basis of the court's action was its conclusion that the issuance of the citation was the fruit of an illegal arrest.

■ First, we conclude that the arrest and citation of defendant was lawful. The state police officers had probable cause to believe that the driver of the red Audi had violated ORS 487.555, a class A misdemeanor and a major traffic offense. ORS 487.555(2),

487.530(4), 484.010(5)(e). Other officers, including the Oswego police, receiving the broadcast information of the alleged eluding incident, had the same probable cause. The Oswego officers, in addition, had received word that the same Audi had been involved in a shooting incident in Washington Park. When the Lake Oswego officer saw defendant pull into his driveway, they were authorized to arrest him. ORS 484.100(1). When defendant did not heed Officer Reed's call to stop and instead ran into his house, the police acted lawfully when they followed him through an open door. *State v. Wesson,* 40 Or App 99, 594 P2d 429 (1979); *United States v. Santana,* 427 US 38, 96 S Ct 2406, 49 L Ed 2d 300 (1976).

The most reasonable conclusion to be drawn from the facts is that "hot pursuit" justified the warrantless entry into defendant's home by Oswego police. The city officers were authorized to enter and detain defendant for identification and citation by state police officers, who, it was reasonable to believe, had been eluded by defendant. It follows, therefore, that the actions of the Oswego officers were proper and did not afford a basis for dismissing the citation.

■ Second, once defendant was apprehended and arrested at his home on the eluding charge (ORS 487.555), what transpired inside the home thereafter was irrelevant to this case. This includes the searching for the weapon reported to be involved in the Washington Park episode as well as the breaking down of the bedroom door. It was therefore error for the trial court to consider these actions as a basis for decision, if in fact it did so.

Lastly, we do not find this to be an appropriate case for the application of the permissive dismissal rule mentioned in *State v. Scurlock,* 35 Or App 579, 581-82, 581 P2d 986, *aff'd as modified* 286 Or 277, 593 P2d 1159 (1979).

Reversed and remanded for trial.