204 N.J. Super. 181 (1985)
497 A.2d 1284
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BERNARD DAVIS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted July 16, 1985.
Decided September 10, 1985.
*182 Before Judges DREIER and DEIGHAN.
Thomas S. Smith, Acting Public Defender, Attorney for appellant (Theodore Campbell, Designated Counsel, of counsel and on the brief).
Joseph A. Falcone, Prosecutor of Passaic County, attorney for respondent (Steven E. Braun, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant has appealed from a conviction for first degree robbery, N.J.S.A. 2C:15-1, and unlawful possession of a sawed-off shotgun, N.J.S.A. 2C:39-3b. He was sentenced to a term of 20 years with an eight year parole ineligibility as well as a $100 Violent Crime Compensation Board penalty for armed robbery and a concurrent five year term and $25 penalty for the unlawful possession of the shotgun.
The victim, Vincent Donatacci, was at the time of the attempted robbery managing his father's liquor store in Passaic. A black male entered the store when no customers were present, pointed a shotgun at Donatacci's head and, after forcing him into the back room, demanded the store's money. When other customers came into the store, the perpetrator told Donatacci to remain in the bathroom, laid down the weapon and attempted to service the customers. Donatacci, however, noting that the weapon was within his reach, grabbed the shotgun and ran out of the store. The assailant also ran out of the *183 store and up the street. Donatacci pursued for a while, but then returned to the store and reported the attempted robbery to the police who immediately dispatched officers to the scene.
Donatacci had seen the assailant run to the corner, turn onto the intersecting street and then into an alley before the next block. The alley was surrounded by a 5 1/2 foot fence leaving only one exit, the rear entrance to 49 Quincy Street. In addition, an unknown female in the area told the police that a tall black male had just run into 49 Quincy Street. The police entered and questioned the occupants on the first and third floors and briefly looked through the premises, finding no male present. There was no answer at the second floor, but there were sounds of people occupying that apartment. The police kicked in the door and found defendant holding a small child. He has bathed in sweat and out of breath; he was immediately arrested.
Defendant has maintained his innocence throughout and has claimed that this is a case of mistaken identity.
After his arrest, defendant was placed in a police car and taken to the scene of the attempted robbery where from another police car Donatacci identified him as the perpetrator. He also stated that he had seen him earlier in the day when defendant had bought some wine or beer. Donatacci related that he had ample opportunity during the robbery attempt to see defendant. He had been taken to the back room by defendant and then passed defendant when leaving the store, but also had talked to him at some length when defendant was waiting on a customer who had come in and asked for a brand of beer that the store did not carry. Defendant had to approach Donatacci twice during this latter incident.
Defendant argues that the police lacked sufficient cause to break down his apartment door and enter his home to make an arrest without a warrant. The State argues that there was probable cause for such actions and that, in any event, the witness' independent bases for observing defendant prior to the post-arrest identification precludes any application of the doctrines *184 of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) and Wong Sun v. U.S., 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We agree with the State's contentions on both points.
An arrest without warrant and an intrusion into a person's home to make such arrest may be made only upon probable cause. United States v. Santana, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); State v. Fariello, 71 N.J. 552, 568-69 (1976). After the initial pursuit by the victim, the police within minutes took up this pursuit which led to defendant's door. At that point the police did not know whether there were other exits from defendant's apartment, whether he possessed other weapons or whether others on the premises might have been in danger from him. He had within the past half hour threatened to "blow off" the victim's head if he did not cooperate. For the police merely to have guarded the premises while a warrant was obtained would have potentially placed both the police and other citizens in danger, since defendant would then have had time to rearm himself or to fortify his position. When the door was opened by the police and defendant was seen to fit the description of the perpetrator as to skin tone, height and small beard as well as his being bathed in sweat and still out of breath from the chase there was probable cause for his arrest. Defendant was apprehended literally before he could catch his breath. See Warden v. Hayden, 387 U.S. 294, 298-99, 87 S.Ct. 1642, 1645-46, 18 L.Ed.2d 782, 787 (1967); see also Dorman v. U.S., 435 F.2d 385, 391-93 (D.C. Cir.1970).
Even had there not been such probable cause, we reject the argument advanced by defendant that the Mapp or Wong Sun doctrines would apply to exclude the identification of defendant at trial. All evidence subsequent to an illegal search is not automatically inadmissible. State v. Hunt, 91 N.J. 338, 349 (1982). The in-court identification would not have been rendered excludable, irrespective of any "tainted" identification in the patrol car, since the witness had an independent source for his in-court identification not derived from the arrest (i.e. a reliable mental image of the assailant). U.S. v. Crews, 445 *185 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980). As the Court noted in Crews:
An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction ... [r]espondent is not himself a suppressible "fruit," ... the exclusionary rule enjoins the Government from benefiting from evidence it has unlawfully obtained; it does not reach backward to taint information that was in official hands prior to any illegality ... [Id. at 474-75, 100 S.Ct. at 1251-1252; 63 L.Ed.2d at 547-48].
The police here knew that the perpetrator of the crime had run to a certain building and they had pinpointed defendant's apartment. Thus, even if the entry into defendant's home was illegal, the presence of the accused in the court inevitably would have been attained by legal means. See United States v. Jarvis, 560 F.2d 494, 499 (2d Cir.1977), cert. den., 435 U.S. 934, 98 S.Ct. 1511, 55 L.Ed.2d 532 (1978) ("no evidence is being challenged which could not have been obtained without the illegal arrest"). Here, as in Jarvis, the arrest could have been made when defendant emerged from the premises; thus, the break-in and arrest, if illegal, was not a sine qua non of defendant's presence in court. Vincent Donatacci's ability to recognize defendant derived from his firm recollection of defendant at the crime scene and was unaffected by any alleged police misconduct. As noted in Crews:
the victim's capacity to identify [his] assailant in court neither resulted from nor was biased by the unlawful police conduct committed long after [he] had developed that capacity. [Id. at 455 U.S. 472, 100 S.Ct. 1250, 63 L.Ed.2d 546].
See also State v. Hodgson, 44 N.J. 151, 157 (1965), cert. den. 384 U.S. 1021, 86 S.Ct. 1929, 16 L.Ed.2d 1022 (1966).
The convictions appealed from are affirmed.