225 N.J. Super. 335 (1988)
542 A.2d 494
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RICHARD BOLTE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 20, 1988.
Decided May 31, 1988.
*336 Before Judges FURMAN and LONG.
Stephen W. Kirsch argued the cause for appellant (Francis J. Hartman, attorney).
Jeanne Covert, Assistant Burlington County Prosecutor, argued the cause for respondent (Stephen G. Raymond, Burlington County Prosecutor, attorney; Kathy Morrissey, Assistant Prosecutor, of counsel and on the letter brief).
The opinion of the court was delivered by LONG, J.A.D.
On April 6, 1987, defendant Richard Bolte was arrested and charged by complaint with reckless driving, contrary to N.J.S.A. 39:4-96; driving while intoxicated (d.w.i.), contrary to N.J.S.A. 39:4-50; refusal to submit to a breathalyzer test, contrary to N.J.S.A. 39:4-50.2; speeding, contrary to N.J.S.A. 39:4-99; driving on an expired license, contrary to N.J.S.A. 39:3-10; failure to maintain a single lane, contrary to N.J.S.A. 39:4-88b; disorderly conduct, contrary to N.J.S.A. 2C:33-2a; eluding, *337 contrary to N.J.S.A. 2C:29-2b; and resisting arrest, contrary to N.J.S.A. 2C:29-2a. He filed a motion to suppress the evidence against him. The trial judge denied the motion, and we granted defendant leave to appeal from that denial.
The facts in the case are essentially undisputed. At approximately 1:40 a.m. on April 6, 1987, Patrolman William E. Liss, Jr. of the Moorestown Police Department was on routine patrol when he observed a 1986 four-door Lincoln Continental. The driver and sole occupant of the Lincoln was later identified as the defendant, Richard J. Bolte. Liss followed the Lincoln for approximately one mile on Tom Brown Road and observed the Lincoln weaving and moving off the pavement over the shoulder of the road onto the grass. The Lincoln turned at the intersection of Westfield Road and headed south. At this point, Liss activated his emergency lights and siren to alert the driver to stop the Lincoln. The Lincoln did not stop. Liss followed the Lincoln on Westfield Road for approximately six-tenths of a mile with the emergency lights and siren on. During this time, he observed the driver look into his rear view mirror and ignore the presence of the patrol vehicle. The Lincoln turned right onto Stanwick Glen Road, travelled approximate 200 feet and made lefts onto Sentinel Road, Deerfield Terrace, Eagle Brook Drive, and back onto Stanwick Glen Road to complete a circle of the neighborhood. After completing this route, the Lincoln repeated it, increasing its speed each time, for a total of four tours of the neighborhood. The speed ranged from 20 miles per hour to approximately 48 miles per hour, and according to Liss, as the speed increased, the operation of the vehicle became more erratic. On the fourth lap around the neighborhood, the Lincoln entered the driveway of 511 Eaglebrook Drive. The garage door was opened, apparently automatically. Liss followed the car, and exited his patrol car in the driveway. He entered the garage just as the automatic garage door started to close, and the defendant got out of the Lincoln. Defendant entered the house. Liss asked the defendant to open the door, but defendant continued on his way. Liss followed the defendant *338 into the house and advised him that he was under arrest. Defendant continued to ignore the officer's request and continued to walk through the house. He then ran up the stairs and entered what appeared to be a bedroom and attempted to close the door. Patrolman Liss followed, was able to keep the door from closing and continued to advise the defendant that he was under arrest. Defendant began to talk to someone in the bedroom. At this point, Liss left the bedroom door which was then closed and locked. He then let Patrolman Fullerton and Sergeant Pugh of the Moorestown Police Department, to whom he had radioed for backup, into the residence. When Liss returned to the bedroom, the door had been unlocked, and he was greeted by a woman, later identified as Mrs. Bolte, the wife of the defendant. The defendant then came out of the bathroom, which was located in the bedroom, and was again advised that he was under arrest. After a minor struggle, the defendant was handcuffed and taken to the station for processing. He was subsequently charged with numerous motor vehicle and disorderly persons violations. On this appeal defendant claims that:
JUDGE SULLIVAN'S DECISION TO DENY DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SHOULD BE REVERSED SINCE NO EXIGENT CIRCUMSTANCES EXISTED TO JUSTIFY THE WARRANTLESS ENTRY INTO DEFENDANT'S HOME AND, THUS, THE SUBSEQUENT ARREST OF DEFENDANT WAS UNCONSTITUTIONAL.
We have carefully reviewed this record and have concluded that the motion to suppress should have been granted. Thus, we reverse.
It is well-established that under ordinary circumstances, a warrant is required in order to justify the search of a person or property. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The procedure of obtaining a warrant is a caution to insure that there is a reasonable basis for the search and that the intrusion will be confined in scope. State v. Bruzzese, 94 N.J. 210, 218 (1983), cert. den. 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984) citing Katz, supra, 389 U.S. at 358-59, 88 S.Ct. at 515, 19 L.Ed.2d at 585-86. Lacking the *339 procedural safeguards of a warrant, a warrantless search is presumed to be invalid. State v. Valencia, 93 N.J. 126, 133 (1983). Certain exceptions to the warrant requirement have developed over the years, two of which were invoked by the State in this case: the "hot pursuit" exception of Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and the exigent circumstances exception addressed in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The State argues (and the trial judge agreed) that these exceptions justified the officer's warrantless intrusion because he was in the process of pursuing a miscreant who was trying to elude him and because the possible dissipation of blood alcohol presented exigent circumstances. We disagree.
The two Supreme Court cases which established "hot pursuit" as a limited exception to the warrant requirement are Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) and United States v. Santana, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). These decisions both involved fleeing felons and were based not only on the concept of hot pursuit but also on separate emergent considerations which, when coupled with the pursuit, justified the warrantless intrusion. In Warden, both flight and injury to innocent members of the public were strong possibilities even after the armed robber had entered his home. In Santana, destruction of valuable evidence (heroin and marked bills) was likely to occur if the police waited for a warrant to arrive before entering the defendant's home. These cases are totally distinguishable from this one. As the State conceded in its brief and again at oral argument, here the officer had probable cause only as to certain motor vehicle offenses (not d.w.i.) and eluding. These relatively minor offenses do not justify the kind of warrantless intrusion which occurred here. Payton v. New York, supra; see also Welsh v. Wisconsin, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); People v. Strelow, 96 Mich. App. 182, 292 N.W.2d 517 (1980). As the court in Strelow observed:

*340 The hot pursuit doctrine excuses strict adherence to statutory notice and demand mandates in order to prevent police from being unduly burdened in their efforts to arrest criminals guilty of serious offenses. Preventing the escape of a fleeing felon may necessarily prevail over the interests the statute was designed to protect. Employing the same balancing test, the less serious nature of a misdemeanor offense militates against extending the hot pursuit exception to justify unannounced entry into a private residence to make such an arrest. Important interests such as privacy expectations and prevention of unnecessary violence must, in this instance, prevail (emphasis added). [292 N.W.2d at 521.]
Moreover, even if we did not view the hot pursuit exception to be limited to serious offenses, we think that additional emergent factors such as those considered in Warden and Santana, would have to be present to justify a warrantless entry. The State claims that the dissipation of blood alcohol is the additional factor present in this case. This argument must fail. As the State has properly conceded, Liss did not have probable cause to believe that defendant was guilty of d.w.i. Erratic driving alone is an insufficient basis for the necessary probable cause finding. Under the circumstances, he could not justify his warrantless intrusion on the need to avoid the dissipation of blood alcohol because blood alcohol was not evidential as to any offense with respect to which he had probable cause.
Moreover, even if he had had probable cause to believe that defendant had committed a d.w.i. offense, the result would be the same. In Welsh v. Wisconsin, supra, the police arrested a defendant in his home without a warrant after witnesses to a motor vehicle accident in which defendant was involved said that he appeared to be drunk or sick as he walked home from the scene. In invalidating defendant's conviction for refusal to undergo the breathalyzer test, the Supreme Court reaffirmed the principle that exceptions to the warrant requirement are extremely rare and "that the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." It concluded that except in the case of a very serious crime,
a warrantless home arrest cannot be upheld simply because evidence of the petitioner's blood  alcohol level might have dissipated while the police obtained *341 a warrant (footnote omitted). [466 U.S. at 754, 104 S.Ct. at 2100, 80 L.Ed.2d at 746.]
In sum, the warrantless intrusion in this case failed to meet the Fourth Amendment standard of reasonableness. Liss saw defendant commit various minor traffic offenses. He followed defendant home. (It was obviously defendant's home because he activated the garage door automatically from his car). At this point, Liss erred. Instead of sneaking under the garage door, he should have gotten out of his car and rung the doorbell. Defendant might well have emerged. Even if he did not, the other officers were by then at or near the scene. The house could have been secured and a warrant obtained, in person or telephonically if necessary. Instead, Liss undertook a perilous course of action which violated the sanctity of defendant's home for absolutely no good reason. There was simply no "substantial police need" for the action he took. State v. Seiss, 168 N.J. Super. 269 (App.Div. 1979).
We thus reverse and remand the matter for the entry of an order of suppression.