STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. RICHARD J. BOLTE, DEFENDANT-RESPONDENT.

Argued April .25, 1989—Decided July 12, 1989.

*Boris Moczula,* Deputy Attorney General, argued the cause for appellant (*Peter N. Perretti, Jr.,* Attorney General of New Jersey, attorney).

*Stephen W. Kirsch* argued the cause for respondent (*Francis J. Hartman,* attorney).

The opinion of the Court was delivered by

STEIN, J.

In this case the Court is called on to determine whether a police officer, in "hot pursuit" of a person suspected of numer-

ous motor vehicle and disorderly persons offenses, may make a warrantless entry into the suspect's home to effect an arrest.

In the early morning hours of April 6, 1987, a Moorestown police officer, after observing certain erratic driving behavior and trailing an automobile for approximately one mile, followed Richard Bolte, the driver, to his residence. Bolte exited his car and entered his home through a garage door. The officer followed him into the garage, then into the house and upstairs to the bedroom door where Bolte's wife was asleep. The officer informed Bolte that he was under arrest. Later, at the station house, Bolte refused to submit to a breathalyzer test.

Bolte was charged with a number of motor vehicle and disorderly persons offenses. Bolte moved to suppress the evidence of his refusal to submit to a breathalyzer test on the ground that it was the product of an unlawful arrest. The trial court denied Bolte's motion, holding that the "hot pursuit" and "exigent circumstances" exceptions to the fourth amendment warrant requirement justified the officer's intrusion into Bolte's home. The Appellate Division granted defendant's motion for leave to appeal, and reversed and remanded for entry of a suppression order. *State v. Bolte*, 225 *N.J.Super.* 335 (1988). The court held that the "hot pursuit" exception to the fourth amendment warrant requirement is limited to serious offenses, and concluded that even absent a "serious offense" limitation, "exigent circumstances" did not exist in this case. *Id.* at 339–40. The court concluded that there was "no 'substantial police need'" for the warrantless invasion of Bolte's home. *Id.* at 341. This Court granted the State's motion for leave to appeal. We affirm.

I.

On April 6, 1987, at 1:40 a.m., Moorestown Police Officer William Liss began to follow an automobile after he noticed the automobile swerving on and off the road. When the automobile signalled a turn, the officer activated his lights and siren.

Officer Liss observed the driver look into his mirror, apparently ignore the presence of the patrol vehicle, and continue on. The automobile made four loops of the neighborhood, increasing its speed as it proceeded. The speed ranged from twenty miles per hour to approximately forty-eight miles per hour. According to Liss, as the speed increased, the operation of the vehicle became more erratic.

The automobile finally stopped in the driveway of a private residence. The driver, Richard Bolte, exited the car and entered his garage. Officer Liss followed Bolte to the garage, into the house and upstairs to the bedroom door where Liss informed Bolte that he was under arrest. Later, at the station house, Bolte refused to take a breathalyzer test, the evidence that he subsequently moved to suppress.

Bolte was charged with reckless driving, *N.J.S.A.* 39:4-96; driving while intoxicated (DWI), *N.J.S.A.* 39:4-50; refusal to submit to a breathalyzer test, *N.J.S.A.* 39:4-50.2; speeding, *N.J.S.A.* 39:4-99; driving on an expired license, *N.J.S.A.* 39:3-10; failure to maintain a single lane, *N.J.S.A.* 39:4-88b; disorderly conduct, *N.J.S.A.* 2C:33-2a; eluding, *N.J.S.A.* 2C:29-2b; and resisting arrest, *N.J.S.A.* 2C:29-2a.

The parties submitted a stipulation to the facts of Bolte's arrest. In the trial court, defendant moved to suppress the evidence of his refusal to submit to a breathalyzer test on the basis that the arrest was unlawful.[1] The trial court denied the motion, agreeing with the State that the "hot pursuit" and "exigent circumstances" exceptions to the fourth amendment warrant requirement justified the officer's intrusion into Bolte's home because Bolte was eluding apprehension by Officer Liss and because of the possible dissipation of alcohol in his blood. The court maintained that "the practical problem" with defen-

---

[1] In that connection, we note that the statutory predicate for imposing penalties for refusal to submit to a breathalyzer test is that the defendant has been arrested for a violation of *N.J.S.A.* 39:4-50. See *N.J.S.A.* 39:4-50a. It is evident that the statute contemplates a *lawful* arrest.

dant's argument is that it "encourages people to disobey a police officer when they tell them to stop."

In reversing and remanding for entry of a suppression order, the Appellate Division concluded that neither the "hot pursuit" nor "exigent circumstances" exception, jointly or separately, supported the denial of defendant's suppression motion. The court concluded that the United States Supreme Court opinions in *Warden v. Hayden*, 387 *U.S.* 294, 87 *S.Ct.* 1642, 18 *L.Ed.*2d 782 (1967), and *United States v. Santana*, 427 *U.S.* 38, 96 *S.Ct.* 2406, 49 *L.Ed.*2d 300 (1976), cases that recognized "hot pursuit" as a limited exception to the fourth amendment warrant requirement, were distinguishable from *Bolte*. 225 *N.J.Super.* at 335. The court maintained that the "hot pursuit" exception is applicable only to serious offenses. *Ibid.* The court observed that *Hayden* and *Santana* "both involved fleeing felons and were based not only on the concept of hot pursuit but also on separate emergent considerations which, when coupled with the pursuit, justified the warrantless intrusion." *Ibid.* The court added:

> [E]ven if we did not view the hot pursuit exception to be limited to serious offenses, we think that additional emergent factors such as those considered in *Warden* and *Santana* would have to be present to justify a warrantless entry. The State claims that the dissipation of blood alcohol is the additional factor present in this case. This argument must fail. As the State has properly conceded, Liss did not have probable cause to believe that defendant was guilty of DWI. Erratic driving alone is an insufficient basis for the necessary probable cause. [*Id.* at 340.]

Thus, the court concluded that the State failed to justify the warrantless intrusion in this case. *Ibid.*

## II.

The United States Supreme Court and this Court continue to adhere to the notion that warrantless searches or arrests in the home must be subjected to particularly careful scrutiny. The Supreme Court has recently reaffirmed the principle that only in extraordinary circumstances may a warrantless home arrest

or search be justified. *See Welsh v. Wisconsin,* 466 *U.S.* 740, 104 *S.Ct.* 2091, 80 *L.Ed.*2d 732 (1984).

In *Silverman v. United States,* 365 *U.S.* 505, 81 *S.Ct.* 679, 5 *L.Ed.*2d 734 (1961), Justice Stewart wrote:

> The Fourth Amendment, and the personal rights which it secures, have a long history. At the very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.

> This Court has never held that a federal officer may without warrant and without consent physically entrench into a man's office or home, there secretly observe or listen, and relate at the man's subsequent criminal trial what was seen or heard * * *

> What the Court said long ago bears repeating now: "It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure." [*Id.* at 511–12, 81 *S.Ct.* at 683, 5 *L.Ed.*2d at 739 (citations omitted).]

In *Silverman,* the Court invalidated a warrantless search involving police interception by an electronic listening device of conversations in the home of suspected gamblers. *Id.* at 512, 81 *S.Ct.* at 683, 5 *L.Ed.*2d at 739.

The Court reiterated this protective approach in *Chimel v. California,* 395 *U.S.* 752, 89 *S.Ct.* 2034, 23 *L.Ed.*2d 685 (1969), where it stated:

> We are not dealing with formalities. The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals. * * * And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home. We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative. [*Id.* at 761, 89 *S.Ct.* at 2039, 23 *L.Ed.*2d at 693.]

*Chimel* invalidated a search of defendant's home subsequent to a valid arrest as too broad in scope. *Id.* at 768, 89 *S.Ct.* at 2043, 23 *L.Ed.*2d at 697.

Justice Garibaldi expressed this basic principle in *State v. Bruzzese*, 94 *N.J.* 210 (1983), *cert.* denied, 465 *U.S.* 1030, 104 *S.Ct.* 1295, 79 *L.Ed.*2d 695 (1984):

> The [United States] Supreme Court has consistently asserted that "the rights of privacy and personal security protected by the Fourth Amendment ... are to be regarded as of the very essence of constitutional liberty...." " Historically, the Court has applied a more stringent standard of the Fourth Amendment to searches of a residential dwelling. Indeed, one of this country's most protected rights throughout history has been the sanctity and privacy of a person's home. [94 *N.J.* at 217.]

Warrantless searches, particularly in a home, are presumptively unreasonable and invalid unless justified by a recognized exception to the warrant requirement. *See Welsh v. Wisconsin, supra,* 466 *U.S.* at 749, 104 *S.Ct.* at 2097, 80 *L.Ed.*2d at 742; *State v. Bruzzese, supra,* 94 *N.J.* at 218; *State v. Valencia,* 93 *N.J.* 126, 133 (1983); *State v. Young,* 87 *N.J.* 132, 141 (1981). This Court has expressed its willingness to adopt as its own law "the specific exceptions [to the warrant requirement] created by the United States Supreme Court." *State v. Patino,* 83 *N.J.* 1, 7 (1980) [2] ("The warrant requirement ... may be dispensed with in only a few narrowly circumscribed exceptions. The *prima facie* invalidity of any warrantless search is overcome only if that search falls within one of the specific exceptions created by the United States Supreme Court."); *State v. Ercolano,* 79 *N.J.* 25, 41–42 (1979) ("[T]he basic precept of the Fourth Amendment [is] that any warrantless search is *prima facie* invalid and gains validity only if it comes within one of the specific exceptions created by the United States Supreme Court."). Moreover, "the State must prove the overall reasonableness and validity of [such] a search." *Bruzzese, supra,* 94 *N.J.* at 218.

This Court and the United States Supreme Court have adopted the principle that "exigent circumstances" in conjunc-

---

[2] *But cf. State v. Novembrino,* 105 *N.J.* 95, 105 (1987) (rejecting application of United States Supreme Court's adoption of "good faith" exception to the exclusionary rule where warrants are issued on less than probable cause).

tion with probable cause may excuse police from compliance with the warrant requirement. *See State v. Bruzzese, supra,* 94 *N.J.* at 217–18; *State v. Valencia, supra,* 93 *N.J.* at 136 ("to sustain a warrantless search, the State must ordinarily demonstrate that exigent circumstances prevented obtaining a written warrant and that probable cause for the search existed."). Despite the widespread acceptance of the "exigent circumstances" exception in both federal and state courts,[3] this exception to the fourth amendment warrant requirement has not frequently been considered by either the United States Supreme Court or this Court.[4]

In *Payton v. New York,* 445 *U.S.* 573, 100 *S.Ct.* 1371, 63 *L.Ed.*2d 639 (1980), the Court invalidated state statutes that authorized police officers to enter a private residence without a warrant and with force, if necessary, to make a routine felony arrest. In *Payton,* while the warrantless arrests at issue may have been justified by "exigent circumstances," the Court did not consider that question because "none of the New York courts relied on any such justification" and the state's highest court "treated both * * * cases [below] as involving routine

---

[3]*See, e.g., United States v. Socey,* 846 *F.*2d 1439 (D.C.Cir.), *cert.* denied, —— *U.S.* ——, 109 *S.Ct.* 152, 102 *L.Ed.*2d 123 (1988); *United States v. Catthouse,* 846 *F.*2d 144 (2d Cir.), *cert.* denied, —— *U.S.* ——, 109 *S.Ct.* 316, 102 *L.Ed.*2d 335 (1988); *United States v. Rubin,* 474 *F.*2d 262 (3d Cir.), *cert.* denied *sub nom. Agran v. United States,* 414 *U.S.* 833, 94 *S.Ct.* 173, 38 *L.Ed.*2d 68 (1973); *Dorman v. United States,* 435 *F.*2d 385 (D.C.Cir.1970) (*en banc*); *People v. Eichelberger,* 91 Ill.2d 359, 63 Ill.Dec. 402, 438 *N.E.*2d 140, *cert.* denied, 459 *U.S.* 1019, 103 *S.Ct.* 383, 74 *L.Ed.*2d 514 (1982); *State v. Hatcher,* 322 *N.W.*2d 210 (Minn.1982).

[4]*Cf. Salken, Balancing Exigency and Privacy in Warrantless Searches to Prevent Destruction of Evidence: The Need for A Rule,* 39 Hastings L.J. 283, 283 (1988) ("The Supreme Court has infrequently considered the question and has never provided a clear standard for determining when warrantless action is justified.").

The Court itself has acknowledged that it has "[left] to the lower courts the initial application of the exigent circumstances exception." *Welsh v. Wisconsin, supra,* 466 *U.S.* at 749, 104 *S.Ct.* at 2097, 80 *L.Ed.*2d at 743.

arrests in which there was ample time to obtain a warrant." 445 *U.S.* at 582–83, 100 *S.Ct.* at 1378, 63 *L.Ed.*2d at 648. Therefore the Court in *Payton* did not consider what sort of exigent circumstances "would justify a warrantless entry into a home for the purpose of either arrest or search." *Id.* at 583, 100 *S.Ct.* at 1378, 63 *L.Ed.*2d at 649.

In *Warden v. Hayden, supra,* 387 *U.S.* 294, 87 *S.Ct.* 1642, 18 *L.Ed.*2d 782, the Court upheld a warrantless search of a private residence. Two cab drivers in the vicinity of an armed robbery, attracted by shouts of "Holdup," followed a man fleeing the robbed premises to a certain address. One driver described the man to his dispatcher while the latter, by company radio dispatch, relayed the information to the police who were then proceeding to the scene of the robbery. 387 *U.S.* at 297, 87 *S.Ct.* at 1645, 18 *L.Ed.*2d at 786. The following ensued:

> Within minutes, police arrived at the house in a number of patrol cars. An officer knocked and announced their presence. Mrs. Hayden answered, and the officers told her they believed that a robber had entered the house, and asked to search the house. She offered no objection. The officers spread out through the first and second floors and the cellar in search of the robber. Hayden was found in an upstairs bedroom feigning sleep. He was arrested when the officers on the first floor and in the cellar reported that no other man was in the house. Meanwhile an officer was attracted to an adjoining bathroom by the noise of running water, and discovered a shotgun and a pistol in a flush tank; another officer who, according to the District Court, "was searching the cellar for a man or the money" found in a washing machine a jacket and trousers of the type the fleeing man was said to have worn. A clip of ammunition for the pistol and a cap were found under the mattress of Hayden's bed, and ammunition for the shotgun was found in a bureau drawer in Hayden's room. All these items of evidence were introduced against respondent in his trial. [*Id.* at 297–98, 87 *S.Ct.* at 1645, 18 *L.Ed.*2d at 786–87.]

Under the circumstances, the Court held that "the exigencies of the situation made that course imperative," *id.* at 298, 87 *S.Ct.* at 1645, 18 *L.Ed.* at 787 (quoting *McDonald v. United States,* 335 *U.S.* 451, 456, 69 *S.Ct.* 191, 193, 93 *L.Ed.* 153, 158 (1948)). The Court found significant that "[t]he police were informed that an armed robbery had taken place, and that the suspect had entered [the residence] less than five minutes before they reached it." 387 *U.S.* at 298, 87 *S.Ct.* at 1646, 18

*L.Ed.*2d at 787. The Court maintained that "[t]he Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." *Id.* at 298–99, 87 *S.Ct.* at 1646, 18 *L.Ed.*2d at 787.[5]

*Santana* involved the warrantless search of a private dwelling pursuant to an undercover police officer's arrangement of a drug purchase from a third party. 427 *U.S.* 38, 96 *S.Ct.* 2406, 49 *L.Ed.*2d 300. The officer, Michael Gilletti, arranged a heroin "buy" with Patricia McCafferty, from whom he had previously purchased narcotics. After McCafferty told Gilletti that they would "go down to Mom Santana's for the dope," Gilletti met McCafferty at a prearranged location. Gilletti and McCafferty drove to what she informed him was Santana's residence. McCafferty made the planned drug purchase with marked money. She then turned over to Gilletti several glassine envelopes containing a brownish-white powder believed to be heroin. Gilletti told her that the police were going back to the location of the drug purchase and asked where the money was. It is helpful to provide the Court's recital of what ensued:

> She said, "Mom has the money." At this point Sergeant Pruitt and other officers came up to the car. Gilletti showed them the envelope and said "Mom Santana has the money." Gilletti then took McCafferty to the police station.
>
> Pruitt and the others then drove approximately two blocks back to [Santana's residence]. They saw Santana standing in the doorway of the house with a brown paper bag in her hand. They pulled up to within 15 feet of Santana and got out of their van, shouting "police," and displaying their identification. As the officers approached, Santana retreated into the vestibule of her house.
>
> The officers followed through the open door catching her in the vestibule. As she tried to pull away, the bag tilted and "two bundles of glazed paper

---

[5]Although the court in *Warden* did not then refer to it as such, the Supreme Court subsequently in *Santana* considered *Warden* a "hot pursuit" case. *United States v. Santana, supra,* 427 *U.S.* at 42–43, 96 *S.Ct.* at 2410, 49 *L.Ed.*2d at 305. It seems that the phrase "hot pursuit" first appears in *Johnson v. United States,* 333 *U.S.* 10 n. 7, 68 *S.Ct.* 367 n. 7, 92 *L.Ed.* 436 n. 7 (1968), where the Court recognized that "some element of a chase will usually be involved in a 'hot pursuit.'" *United States v. Santana, supra,* 427 *U.S.* at 43 n. 3, 96 *S.Ct.* at 2410 n. 3, 49 *L.Ed.* at 305 n. 3.

packets with a white powder" fell to the floor. Respondent Alejandro tried to make off with the dropped envelopes but was forcibly restrained. When Santana was told to empty her pockets she produced $135, $70 of which could be identified as Gilletti's marked money. The white powder in the bag was later determined to be heroin. [*Id.* at 39–41, 96 *S.Ct.* at 2407–09, 49 *L.Ed.*2d at 303–04.]

The issue in *Santana* was "whether [Santana's] act of retreating into her house could thwart an otherwise proper arrest." *Id.* at 42, 96 *S.Ct.* at 2409, 49 *L.Ed.*2d at 305. The Court first observed that if Santana were in a public place, she could have been arrested without a warrant. *Ibid.*, at 42, 96 *S.Ct.* at 2409, 49 *L.Ed.*2d at 305 (citing *United States v. Watson*, 423 *U.S.* 411, 96 *S.Ct.* 820, 46 *L.Ed.*2d 598 (1976)). However, as the facts indicate, Santana retreated into the vestibule of her house prior to the officers' entry through the open door. *Id.* 427 *U.S.* at 40, 96 *S.Ct.* at 2408, 49 *L.Ed.*2d at 304. The court analyzed these events as follows:

This case, involving a true pursuit, is clearly governed by *Warden;* the need to act quickly here is even greater than in that case while the intrusion is much less. The District Court was correct in concluding that "hot pursuit" means some sort of a chase, but it need not be an extended hue and cry "in and about [the] public streets." The fact that the pursuit here ended almost as soon as it began did not render it any less a "hot pursuit" sufficient to justify the warrantless entry into Santana's house. Once Santana saw the police, there was likewise a realistic expectation that any delay would result in destruction of evidence. Once she had been arrested the search, incident to that arrest, which produced the drugs and money was clearly justified.

We thus conclude that a suspect may not defeat an arrest which has been set in motion in a public place, and is therefore proper under *Watson*, by the expedient of escaping to a private place. [*Id.* at 42–43, 96 *S.Ct.* at 2409–10, 49 *L.Ed.*2d at 305–06 (citations omitted).]

While Santana was the first Supreme Court case to articulate the "hot pursuit" exception, it has since been interpreted to apply only to the pursuit of fleeing felons.[6]

---

6*See, e.g., Welsh v. Wisconsin, supra,* 466 *U.S.* 740, 104 *S.Ct.* 2091, 80 *L.Ed.*2d 732; *United States v. Aquino,* 836 *F.*2d 1268 (10th Cir.1988) ("The only case in which the Supreme Court has held the exigent circumstance exception sufficient to justify warrantless entry into a suspect's home involved the hot pursuit of a fleeing felon whom the police could have lawfully arrested without a warrant");

The Court's most recent pronouncement on the "exigent circumstances" exception to the warrant requirement is *Welsh v. Wisconsin, supra,* 466 *U.S.* 740, 104 *S.Ct.* 2091, 80 *L.Ed.*2d 732. *Welsh,* however, did not involve the question of "hot pursuit." *Id.* at 753, 104 *S.Ct.* at 2099, 80 *L.Ed.*2d at 745. In *Welsh,* the Court held that the fourth amendment prohibited police from making a warrantless night entry into a home to arrest defendant for the violation of a "nonjailable" traffic offense. *Id.* at 754, 104 *S.Ct.* at 2093, 80 *L.Ed.*2d at 746. In *Welsh,*

> [s]hortly before 9 o'clock on the rainy night of April 24, 1978, a lone witness, Randy Jablonic, observed a car being driven erratically. After changing speeds and veering from side to side, the car eventually swerved off the road and came to a stop in an open field. No damage to any person or property occurred. Concerned about the driver and fearing that the car would get back on the highway, Jablonic drove his truck up behind the car so as to block it from returning to the road. Another passerby also stopped at the scene, and Jablonic asked her to call the police. Before the police arrived, however, the driver of the car emerged from his vehicle, approached Jablonic's truck, and asked Jablonic for a ride home. Jablonic instead suggested that they wait for assistance in removing or repairing the car. Ignoring Jablonic's suggestion, the driver walked away from the scene.
>
> A few minutes later, the police arrived and questioned Jablonic. He told one officer what he had seen, specifically noting that the driver was either very inebriated or very sick. The officer checked the motor vehicle registration of the abandoned car and learned that it was registered to the petitioner, Edward G. Welsh. In addition, the officer noted that the petitioner's residence was a short distance from the scene, and therefore easily within walking distance. [*Id.* at 742, 104 *S.Ct.* at 2093-94, 80 *L.Ed.*2d at 738.]

On these facts, without obtaining a warrant, the police proceeded to defendant's home where they gained entry into his house after defendant's stepdaughter answered the door.[7]

---

*City of Seattle v. Altschuler,* 53 *Wash.App.* 317, 766 *P.*2d 518 (1989) ("*Santana*'s facts limit its application to the 'hot pursuit' of a fleeing felon.").

[7]Due to the procedural posture of the case, the Court assumed that no valid consent existed to enter petitioner's home. *Id.* at 743 n. 1, 104 *S.Ct.* at 2094 n. 1, 80 *L.Ed.*2d at 739 n. 1.

They found defendant naked in bed and arrested him for driving while intoxicated in violation of Wisconsin law. *Id.* at 743, 104 *S.Ct.* at 2094, 80 *L.Ed.*2d at 738–39. He was then taken to the police station, where he refused to submit to a breathalyzer test. *Ibid.* Defendant subsequently filed a request for a state law hearing to determine whether his refusal to submit to a breathalyzer test was "reasonable" on the basis that his arrest was unlawful.[8] *Id.* at 746–47, 104 *S.Ct.* at 2095–96, 80 *L.Ed.*2d at 741–42. The Supreme Court of Wisconsin held that "exigent circumstances" justified the warrantless arrest, including "the need for 'hot pursuit' of a suspect, the need to prevent physical harm to the offender and the public, and the need to prevent destruction of evidence." *Id.* at 748, 104 *S.Ct.* at 2096, 80 *L.Ed.*2d at 742.

In *Welsh*, the Supreme Court reversed, observing that the State had failed to justify the warrantless arrest on the ground of exigent circumstances. The Court further noted that it "ha[d] recognized only a few such emergency conditions," and had actually applied only the "hot pursuit" doctrine to justify in-home arrests. *Id.* at 750, 104 *S.Ct.* at 2097, 80 *L.Ed.*2d at 743. The Court deemed it significant that the "underlying offense for which there is probable cause to arrest is relatively

---

[8]The parties in *Welsh* did not dispute that under Wisconsin law refusal to submit to a breathalyzer test would be "reasonable" if the test were the product of an unlawful arrest. *Id.* at 745, 104 *S.Ct.* at 2095, 80 *L.Ed.*2d at 740. Before the hearing was held, however, defendant was charged in a separate but related criminal complaint with driving while intoxicated. *Id.* at 746, 104 *S.Ct.* at 2095, 80 *L.Ed.*2d at 741. He moved to dismiss the complaint, relying on his argument that the underlying arrest was unlawful. The trial court upheld the complaint on the ground that the co-existence of probable cause and exigent circumstances justified the warrantless arrest. The same trial court subsequently ruled, in the refusal hearing, that defendant's arrest was lawful and that his refusal to take the breathalyzer test was therefore unreasonable. As a result, defendant's driver's license was suspended for sixty days. The Wisconsin Court of Appeals reversed, finding that the State had not demonstrated exigent circumstances sufficient to effect a warrantless arrest of defendant in his home. *Id.* at 746–47, 104 *S.Ct.* at 2095–96, 80 *L.Ed.*2d at 741.

minor," [9] reasoning that

> [b]efore agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate. [*Id.* at 750, 104 *S.Ct.* at 2098, 80 *L.Ed.*2d at 743. (citations omitted).]

The Court noted that "lower courts have looked to the nature of the underlying offense as an important factor to be considered in the exigent circumstances calculus," *id.* at 751, 104 *S.Ct.* at 2098, 80 *L.Ed.*2d at 744, and concluded that "it is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor." *Id.* at 753, 104 *S.Ct.* at 2099, 80 *L.Ed.*2d at 745.

Finally, the Court treated the question of "hot pursuit" as distinct from the issue of "exigent circumstances." The Court observed:

> The State attempts to justify the arrest by relying on the hot pursuit doctrine, on the threat to public safety, and on the need to preserve evidence of the petitioner's blood-alcohol level. On the facts of this case, however, the claim of hot pursuit is unconvincing because there was no immediate or continuous pursuit of the petitioner from the scene of a crime. [*Ibid.* (emphasis added).]

## III.

The State urges that we uphold the warrantless arrest of Bolte because Officer Liss was in "hot pursuit" of Bolte and because of the potential destruction of evidence, that is, the dissipation of defendant's blood-alcohol content. We reject the first contention and hold that "hot pursuit" alone is an insuffi-

---

9The Court held that given Wisconsin's limited "interest" in precipitating an arrest for DWI based upon its classification for first-time offenders as a "noncriminal, civil forfeiture offense for which no imprisonment is possible," "a warrantless home arrest cannot be upheld simply because evidence of the petitioner's blood-alcohol level might have dissipated while the police obtained a warrant." *Id.* at 754, 104 *S.Ct.* at 2100, 80 *L.Ed.*2d at 746.

cient justification for the warrantless arrest in this case. Nor can the arrest be sustained on the basis of the potential destruction of evidence because, as the State conceded before the Appellate Division, 225 *N.J.*Super. at 339, Officer Liss did not have probable cause when he entered Bolte's home to believe that Bolte had been driving while intoxicated.

The State's reliance on *Warden v. Hayden, supra,* 387 *U.S.* 294, 87 *S.Ct.* 1642, 18 *L.Ed.*2d 782 (1967), is misplaced. In *Warden,* the Court upheld a warrantless search of a private residence where "[t]he police were informed that an armed robbery had taken place, and that the suspect had entered [the residence] less than five minutes before they reached it." *Id.* at 298, 87 *S.Ct.* at 1646, 18 *L.Ed.*2d at 787.[10] In that context, the Court maintained that "[t]he Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." *Id.* at 298–99, 87 *S.Ct.* at 1646, 18 *L.Ed.*2d at 787. The Court held that "[t]he permissible scope of the search must, therefore, at the least, be as broad as may reasonably be necessary to prevent the dangers that the suspect at large in the house may resist or escape." *Id.* at 299, 87 *S.Ct.* at 1646, 18 *L.Ed.*2d at 787.

The Court in *Warden* was concerned with the danger that defendant, a suspected armed felon, posed to the police and public, including those people who may have been present in the house when defendant attempted to seek refuge there. In the present case, the State may claim no similar danger to either the police or the public, particularly *after* Bolte entered his home. There was no indication at that point that Bolte posed a danger to anyone, and nothing in the record suggests that Bolte

---

10Significantly, the Court in *Warden* noted that "the seizures occurred prior to or immediately contemporaneous with Hayden's arrest as part of an effort to find a suspected felon, armed, within the house into which he had run only minutes before the police arrived." *Id.* at 299, 87 *S.Ct.* at 1646, 18 *L.Ed.*2d at 787.

was prepared to leave the house to resume his erratic driving behavior.

The Supreme Court's decision in *Santana* does not support the State's position. *Santana* involved the warrantless search of a home following an undercover police officer's arrangement of a drug purchase from a third party. There was substantial evidence that Santana was engaged in heroin distribution and was the source of the undercover drug purchase. The defendant in *Santana* was apprehended when she retreated into the vestibule of her home after police officers approached her outside her residence. Because the underlying offense in *Santana* was a felony, its application to cases involving minor offenses is questionable. *See, e.g., Welsh v. Wisconsin, supra,* 466 *U.S.* 740, 104 *S.Ct.* 2091, 80 *L.Ed.*2d 732; *United States v. Aquino, supra,* 836 *F.*2d 1268. More importantly, the facts of *Santana* support a compelling emergent circumstance, the threatened destruction of the narcotics. Thus, while *Santana* and *Bolte* arguably share the characteristic of "hot pursuit," the resemblance ends there. *Bolte* involves neither the additional circumstance of the potential destruction of evidence nor the alleged commission of a felony.

The State also relies on *State v. Davis,* 204 *N.J.Super.* 181 (App.Div.1985), certif. denied, 104 *N.J.* 378 (1986). In that case the court upheld a warrantless in-home arrest where the defendant was initially pursued by the victim of an attempted armed robbery. The police took up the pursuit within minutes and, with help from an eyewitness, followed defendant to his door. The court upheld the warrantless arrest on the grounds of "hot pursuit" ("[a]fter the initial pursuit by the victim, the police within minutes took up this pursuit which led to defendant's door"); and "exigent circumstances" ("under the circumstances [f]or the police merely to have guarded the premises while a warrant was obtained would have potentially placed the police and other citizens in danger, since defendant then would have had time to rearm himself or to fortify his position"). *Id.* at 184. *Davis,* however, is distinguishable from *Bolte,* because

*Davis* involved a felony, as well as the significant "exigent circumstance" of concern for the public safety. *Cf. State v. Cooper,* 211 *N.J.Super.* 1 (App.Div.1986), (warrantless entry justified where statute provided that juvenile may be taken into custody without warrant for delinquency or when necessary to protect juvenile's health and safety, police officers pursued juvenile, and on arrival outside apartment, exigent circumstances arose).[11]

---

[11]Both parties have cited a number of state cases in support of their respective positions. In *State v. Penas,* 200 *Neb.* 387, 263 *N.W.*2d 835 (1978), defendant was charged with driving while intoxicated, a third offense, and with resisting arrest. *Id.* 263 *N.W.*2d at 836. The court in *Penas* held that the warrantless in-home arrest of the defendant was supported by the "hot pursuit" exception. *Id.* 263 *N.W.*2d at 837. In *Penas* the police observed defendant through his front door, noticed that "his eyes were bloodshot, red in color," and detected alcohol on his breath. *Id.* 263 *N.W.*2d at 836. Thus, the police had probable cause to believe defendant had been driving while intoxicated. See also *People v. Keltie,* 148 *Cal.App.*3d 773, 196 *Cal.Rptr.* 243, 247–48 (1983) (warrantless home arrest following alleged hit and run justified by exigent circumstance of destruction of evidence where police had probable cause to believe that defendant was under the influence of alcohol when the accident occurred).

In *State v. Niedermeyer,* 48 *Or.App.* 665, 617 *P.*2d 911 (1980), *cert.* denied, 450 *U.S.* 1042, 101 *S.Ct.* 1761, 68 *L.Ed.*2d 239 (1981), an Oregon court held that "hot pursuit" justified a warrantless entry into the defendant's home. Defendant was a suspect in a shooting. The police obtained defendant's address from his automobile registration and subsequently staked out the house. When defendant returned home, "defendant jump[ed] out of his car. * * * The officer called for defendant to stop, but he ran into the house." After defendant appeared near the open doorway to ask what was going on, the two officers entered the house looking for other people and a weapon. *Id.* 617 *P.*2d at 912–13. In *Niedermeyer,* as in *Santana* and *Davis,* "hot pursuit" was coupled with the officers' concern for their own safety and the safety of others in the arrest of a suspected felon.

In *City of Seattle v. Altschuler,* 53 *Wash.App.* 317, 766 *P.*2d 518 (1989), defendant ran a red light. Officers pursued him in a patrol vehicle with their emergency lights on. One block past the red light, the officers approached him, and using their sirens, spotlights, and public-address system, attempted to force defendant to stop. Defendant continued to drive at a moderate rate of speed until he reached his home approximately ten blocks from the intersection where he ran the red light. *Id.* 766 *P.*2d at 519. Defendant entered his home through the garage and the police officer followed. The officer arrested

In our view, the disposition of this case is significantly influenced by *Welsh v. Wisconsin, supra,* where the Supreme Court held that the fourth amendment prohibited police from making a warrantless night entry of a suspect's home to arrest him for the violation of a minor traffic offense. 466 *U.S.* at 754, 104 *S.Ct.* 2093, 80 *L.Ed.*2d at 746. Although the police officer in *Welsh* was not in "hot pursuit" of the defendant, the critical factor in the Supreme Court's decision was that driving while intoxicated was a "nonjailable" offense, which, under Wisconsin law, was treated as a noncriminal violation subject to a civil forfeiture proceeding for a maximum fine of $200. *Id.* at 746, 104 *S.Ct.* at 2095, 80 *L.Ed.*2d at 740–41.[12] Endorsing a "common-sense" approach in determining whether exigent circumstances exist that would justify a warrantless entry into a home, the Court focused on "the gravity of the underlying

defendant in his home and subsequently charged him with resisting arrest, refusal to stop, and running a red light. Defendant testified that the light at the intersection was green and that he had been unaware that the police were trying to stop him. *Ibid.* The Washington Court of Appeals held that although "hot pursuit" was involved, "there [were] no other factors indicating exigent circumstances sufficient to justify" the warrantless arrest in the home. *Id.* 766 *P.*2d at 521. Because the arrest in the home was unlawful, defendant's conviction of resisting arrest could not stand. *Ibid.* The court observed that "[t]he mere fact that [defendant] did not stop his car, without more, does not satisfy the exigent circumstance requirement that would allow government agents to invade the sanctity of the home." *Id.* 766 *P.*2d at 520. In response to the City's argument that defendant was driving a car and could leave at any time, the court responded that "the home itself could have been watched, while the usual warrant or a telephone warrant was obtained." *Ibid.*

12Welsh was charged with a criminal misdemeanor because it was his second citation for DWI within a five-year period. A second offender under the Wisconsin statute could be punished by imprisonment for up to one year and a maximum fine of $500. *Id.* at 746 & n. 6, 104 *S.Ct.* at 2095 & n. 6, 80 *L.Ed.*2d at 740–41 & n. 6. The Court, however, treated the case as one in which petitioner was subject to the civil penalty as a first offender because "the police conducting the warrantless entry of his home did not know that the petitioner had ever been charged with, or much less convicted of[,] a prior violation for driving while intoxicated." *Id.* at 746–47 n. 6, 104 *S.Ct.* at 2096 n. 6, 80 *L.Ed.*2d at 741 n. 6.

offense for which the arrest is being made." *Id.* at 753, 104 *S.Ct.* at 2099, 80 *L.Ed.*2d at 745. The Court noted:

> Moreover, although no exigency is created simply because there is probable cause to believe that a serious crime has been committed, see Payton, application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense, such as the kind at issue in this case, has been committed. [*Id.* at 753, 104 *S.Ct.* at 2099, 80 *L.Ed.*2d at 745.]

The State's concession before the Appellate Division that Officer Liss lacked probable cause, when he entered the house, to believe that Bolte was driving while intoxicated, 225 *N.J.Super.* at 339, requires us to view this case in the context of *Welsh*'s holding that an arrest for a "minor offense" can rarely support a finding of exigent circumstances sufficient to justify a warrantless home entry. Absent probable cause to believe *Bolte* was intoxicated, the officer's pursuit could be justified by his observation that Bolte had probably committed a number of motor vehicle offenses, including reckless driving, *N.J.S.A.* 39:4–95, speeding, *N.J.S.A.* 39:4–99, failure to maintain a single lane, *N.J.S.A.* 39:4–88b, as well as eluding, *N.J.S.A.* 2C:29–2b, and resisting arrest, *N.J.S.A.* 2C:29–2a. The last two violations are disorderly persons offenses and the others are motor vehicle infractions. We hold that these offenses, individually and in the aggregate, are within the category of "minor" offenses held by the *Welsh* Court to be insufficient to establish exigent circumstances justifying a warrantless home entry.

█ Nor does the fact that Officer Liss was in "hot pursuit" of defendant remove this case from the ambit of *Welsh*. We reject the State's contention that hot pursuit alone can support a warrantless entry into a home. Although the State argues that citizens should not be encouraged to elude arrest by retreating into their homes, the question whether hot pursuit by police justifies a warrantless entry depends on the attendant circumstances. The majority opinion in *Welsh* observes that the State's "claim of hot pursuit is unconvincing because there was no immediate or continuous pursuit of the petitioner from the scene of a crime," *id.* at 745, 104 *S.Ct.* at 2095, 80 *L.Ed.*2d

at 740, noting further that since *Welsh* was at home and had abandoned his car, "there was little remaining' threat to the public safety." *Ibid.* We read *Welsh* as leaving open the question whether hot pursuit by police of one who, although having committed only minor offenses, poses a serious threat to the public safety while attempting to elude the police, has created an exigent circumstance sufficient to support a warrantless home entry. To a substantial extent that was the point of Justice White's dissent in *Welsh*, expressed in a factual context not involving hot pursuit:

> The gravity of the underlying offense is, I concede, a factor to be considered in determining whether the delay that attends the warrant-issuance process will endanger officers or other persons. The seriousness of the offense with which a suspect may be charged also bears on the likelihood that he will flee and escape apprehension if not arrested immediately. But *if, under all the circumstances of a particular case, an officer has probable cause to believe that the delay involved in procuring an arrest warrant will gravely endanger the officer or other persons or will result in the suspect's escape, I perceive no reason to disregard those exigencies on the ground that the offense for which the suspect is sought is a "minor" one.* [*Id.* at 759, 104 *S.Ct.* at 2102-03, 80 *L.Ed.*2d at 749 (White, J., dissenting) (emphasis added).]

Although the facts in this record do not demonstrate that there was a serious threat to public safety in the course of Officer Liss' pursuit of defendant, we do not regard *Welsh* as precluding application of the "exigent circumstances" exception in such a factual context. Obviously, less intrusive measures should be used whenever possible including, as the Appellate Division suggested, an attempt at a consensual entry or a telephonic warrant. 225 *N.J.Super.* at 341. If such measures fail, and if the threat to public safety is substantial, the "hot pursuit" of a defendant who poses a threat to public safety may in certain contexts constitute an exigent circumstance sufficient to support a warrantless home entry under current United States Supreme Court decisions.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*For reversal*—None.