994 A.2d 1067 (2010)
413 N.J. Super. 344
STATE of New Jersey, Plaintiff-Respondent,
v.
Riley K. JEFFERSON aka Syncere Riley Jefferson, Defendant-Appellant.
DOCKET NO. A-1945-06T4.
Superior Court of New Jersey, Appellate Division.
Submitted January 12, 2010.
Decided May 21, 2010.
*1069 Yvonne Smith Segars, Public Defender, attorney for appellant (Stephen A. Caruso, Assistant Deputy Public Defender, of counsel and on the brief).
Anne Milgram, Attorney General, attorney for respondent (Carol M. Henderson, Assistant Attorney General, of counsel and on the brief).
Before Judges CARCHMAN, PARRILLO and ASHRAFI.
The opinion of the court was delivered by ASHRAFI, J.A.D.
Defendant Riley Jefferson appeals from an order of the trial court denying his motion to suppress evidence. We reverse.
Defendant entered a conditional plea of guilty to second-degree possession of cocaine with intent to distribute within 1,000 feet of a school, N.J.S.A. 2C:35-5a(1) and -5b(2). In accordance with his plea agreement with the State, other charges were dismissed and defendant was sentenced to five years' imprisonment and money penalties as required by statute. At the time the State filed its brief on this appeal, defendant had been released on parole.
The charges against defendant arose from warrantless police searches of his person and his residence. After indictment, defendant moved to suppress cocaine and related evidence found by those searches. The trial court conducted an evidentiary hearing in which three police officers and defendant testified. Finding the officers' testimony more credible where it differed from defendant's testimony, the court concluded that the police had reasonable and articulable suspicion to detain defendant and investigate his involvement in a reported shooting of a firearm, and that they did not violate his constitutional rights by entering his home without a warrant and subsequently arresting him when he resisted them physically. On appeal, defendant argues that the trial court erred because the searches were illegal and violated his federal and State constitutional rights.

I.
In reviewing a motion to suppress evidence, an appellate court must defer to the trial court's fact findings and "feel" of the case and may not substitute its own conclusions regarding the evidence, even in a "close" case. State v. Locurto, 157 N.J. 463, 471, 724 A.2d 234 (1999) (quoting State v. Johnson, 42 N.J. 146, 161-62, 199 A.2d 809 (1964)); State v. Robinson, 200 N.J. 1, 15, 974 A.2d 1057 (2009); State v. Elders, 192 N.J. 224, 243-44, 927 A.2d 1250 (2007). In particular, the appellate *1070 court must defer to the credibility determinations of the trial court between competing factual testimony. Locurto, supra, 157 N.J. at 474, 724 A.2d 234; State v. Hodgson, 44 N.J. 151, 163, 207 A.2d 542 (1965), cert. denied, 384 U.S. 1021, 86 S.Ct. 1929, 16 L.Ed.2d 1022 (1966).
In this case, the trial court's findings of fact are well-supported by the evidential record, and we have no reason to disagree with those findings. To place the relevant facts in context, the court first noted that the City of Plainfield had been suffering through a gang war in the summer of 2005, resulting in an unusual number of shootings and deaths. On the morning of August 20, 2005, a concerned citizen called the police to report people arguing and selling drugs and a possible gunshot in the 700 block of East Front Street. The citizen described a red Grand Am, giving its license plate number. She also indicated that an African-American man was involved, describing his skin tone and head covering. The police responded to that location at approximately 9:44 a.m., but did not see anything that supported the complaint.
The police checked the plate number provided and determined it was registered to a red Grand Am owned by Tiffanie Morrison with an address in Plainfield. Within minutes, Sergeant David Passarelli, Sergeant Sharon Smith, and three other officers arrived at that address and saw a red Grand Am with the designated license number parked in the street. Sergeant Passarelli placed his hand on the hood and confirmed by the warmth that the car had recently been driven.
The address at which the car was registered was a multi-family dwelling. A solid wood exterior door and a storm door were in the front, opening into a common hallway, with apartments on each of two floors and the basement. The door was kept locked, and only the tenants and landlord had access to the common hallway. A stairway led to the second-floor apartment in which defendant Jefferson and his family lived.
According to defendant's testimony, he had recently arrived home from visiting relatives in the 700 Block of East Front Street. He saw the police from the front window of his apartment and came downstairs. The police witnesses testified they saw defendant's head and shoulder at the front door peering out. Sergeant Smith ordered defendant to show his hands as all five officers approached the front door. Defendant told Sergeant Smith he did not do anything and did not have a gun. The officers shouted for him to show his hands. Eventually, defendant showed the officers his hands around the door. The officers were still unable to see his waist area.
Sergeant Smith continued toward the door, and as defendant took a step back, the door began to open. Sergeant Smith wedged herself into the opening. Defendant attempted to close the door, and the two began to struggle with the door. Other officers saw the door strike Sergeant Smith, and they pushed it open and entered the hallway. After a brief but loud and violent struggle, the police subdued and arrested defendant for allegedly assaulting Sergeant Smith. They patted his clothing and did not find a firearm or any other weapon. Defendant was placed in a police car, and, after being advised of his Miranda rights,[1] he was questioned about the Grand Am and Tiffanie Morrison. He identified her as his wife and told the police she was in the second-floor apartment. Defendant was taken to police headquarters, and when searched, two *1071 bags of crack cocaine were found on his person.
After defendant was taken to headquarters, Sergeant Passarelli entered the hallway of the residence and led the officers up to the second-floor apartment. He listened at the door and heard whispered voices. He banged on the door and announced the police presence. Tiffanie Morrison opened the door with a child clinging to her leg. She and the child appeared to be afraid and upset. Sergeant Passarelli asked if anyone else was in the apartment. Morrison denied anyone else being present, but her eyes darted away from the police into the apartment, causing Sergeant Passarelli to become concerned.
The police asked if they could enter, and Morrison gave permission. The police conducted a protective sweep of the apartment. They found no other person, but they saw narcotics packaging materials and other possible evidence of narcotics. Sergeant Passarelli asked Morrison for consent to search the Grand Am, advising her that she had the right to refuse consent. Morrison consented orally and in writing at 10:15 a.m., and the police thoroughly searched the car, finding no incriminating evidence.
Sergeant Passarelli then requested consent to search the apartment. Morrison was hesitant and asked if she could seek the advice of a relative who was a police officer. Sergeant Passarelli encouraged her to do so, and Morrison made several calls attempting to contact her relative. In the meantime, the police posted officers to secure the apartment and prohibited Morrison or anyone else from entering.
Sergeant Passarelli returned to police headquarters to seek a search warrant. He spoke to a Union County Assistant Prosecutor, who advised him to continue to seek consent for the search. Upon Sergeant Passarelli's return to defendant's residence, Morrison gave her consent in writing at 12:39 p.m. The search of the apartment uncovered quantities of crack cocaine, narcotics paraphernalia, and a stolen bulletproof vest belonging to a police agency.
On these facts, the trial court denied defendant's motion to suppress the evidence recovered from his apartment and his person.

II.
For purposes of our review, we accept the trial court's findings of fact, but we need not defer to the trial court's legal conclusions reached from the established facts. See State v. Brown, 118 N.J. 595, 604, 573 A.2d 886 (1990). "If the trial court acts under a misconception of the applicable law," we need not defer to its ruling. Ibid. The trial court's application of the law is subject to plenary review on appeal.
We agree with most of the conclusions the trial court reached in assessing the facts recited. We hold, however, that the police entered defendant's home when Sergeant Smith wedged herself in the doorway, and that they needed either a warrant or an exception from the warrant requirement of the federal and State constitutions to do so.
The trial court began its decision by concluding that the citizen informant provided a reliable tip, and that the tip established a reasonable basis for the police to investigate the vehicle identified and defendant, who fit the description provided and, minutes later, was at the address where the police found the vehicle. We agree with these conclusions.
Under Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968), and subsequent cases developing *1072 the scope of an exception from the warrant requirement of the Fourth Amendment for temporary detention and investigation of a suspect, e.g., Dunaway v. New York, 442 U.S. 200, 210-11, 99 S.Ct. 2248, 2255-56, 60 L.Ed.2d 824, 834-35 (1979); United States v. Brignoni-Ponce, 422 U.S. 873, 881-82, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607, 616-17 (1975); State v. Dickey, 152 N.J. 468, 477, 706 A.2d 180 (1998), the police had a reasonable articulable suspicion of criminal activity to detain defendant temporarily and investigate his potential involvement in the reported shooting and sale of drugs. See United States v. Hensley, 469 U.S. 221, 229, 105 S.Ct. 675, 680, 83 L.Ed.2d 604, 612 (1985); Elders, supra, 192 N.J. at 247, 927 A.2d 1250; State v. Nishina, 175 N.J. 502, 510-11, 816 A.2d 153 (2003).
We also agree with the trial court that the tip and corroborating evidence were not sufficient to establish probable cause to arrest defendant for any offense. Probable cause requires "a `well-grounded' suspicion that a crime has been or is being committed." State v. Johnson, 171 N.J. 192, 214, 793 A.2d 619 (2002) (quoting State v. Sullivan, 169 N.J. 204, 211, 777 A.2d 60 (2001)). The informant's tip and limited corroborating evidence the police developed did not rise to the level of probable cause to believe that defendant had committed either a firearms or a narcotics offense. Cf. Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612, 617 (1972) (informant's unverified tip not sufficient to constitute probable cause to arrest defendant or search his car but "carried enough indicia of reliability to justify" investigatory stop); State v. Arthur, 149 N.J. 1, 15, 691 A.2d 808 (1997) (police had reasonable suspicion of drug transaction to make a motor vehicle stop and to investigate but not probable cause to search for drugs).
We disagree with the trial court's conclusion that Sergeant Smith acted reasonably, meaning constitutionally, when she wedged herself in the front doorway to prevent defendant from closing it. The trial court found that the common hallway of the multi-family house was not open to the public, and the police were not privileged to enter that hallway. Contrary to the trial court's implicit conclusion, reasonable suspicion to detain and question defendant pursuant to Terry, if the police had encountered him in a place where they had a right to be, did not authorize the police to enter his home for that purpose in the absence of consent or exigent circumstances.
The trial court said, "the police were facing a potentially armed suspect who had not unequivocally indicated that he did not wish to speak to them." But defendant's possible willingness to speak to the police from inside his house did not translate into permission for them to enter. Defendant gave no indication that he had invited the police into the hallway, or into any part of his home. We reject the State's argument that Sergeant Smith could reasonably believe that she was permitted to "move to the threshold to view [defendant's] entire body and ascertain that defendant was not armed." In fact, she inserted herself into the doorway while defendant was peering from behind it, thus expressing his choice to exclude the police from his home.
The State has not cited any case recognizing an exception from the warrant requirement when the police wish to enter a home to effect a Terry-type investigative detention of a suspect. The State's argument that the police have such authority is inconsistent with the constitutional requirement that police have a warrant, or establish an exception to the warrant requirement, when they enter a home to make a formal arrest. See Kirk v. Louisiana, *1073 536 U.S. 635, 638, 122 S.Ct. 2458, 2459, 153 L.Ed.2d 599, 603 (2002); Payton v. New York, 445 U.S. 573, 588-90, 100 S.Ct. 1371, 1381-82, 63 L.Ed.2d 639, 651-53 (1980); State v. Bolte, 115 N.J. 579, 585-86, 560 A.2d 644, cert. denied, 493 U.S. 936, 110 S.Ct. 330, 107 L.Ed.2d 320 (1989). If the police need a warrant or a recognized exception to enter a home to make an arrest, clearly they may not enter a home to effect a warrantless Terry-type detention, which our Supreme Court has determined to be constitutional because it is "minimally intrusive." See Dickey, supra, 152 N.J. at 478, 706 A.2d 180; see also United States v. Washington, 387 F.3d 1060, 1067-68 and n. 8 (9th Cir.2004) ("We have repeatedly held that an intrusion into someone's home may not be premised on Terry's reasonable suspicion standard.").
In this case, the police had no warrant and made no showing of an exception from the warrant requirement when Sergeant Smith partially entered defendant's residence to stop him from closing his front door. That conduct of the police infringed upon the "firm line at the entrance to the house" when applying the protections of the Fourth Amendment. Kirk, supra, 536 U.S. at 638, 122 S.Ct. at 2459, 153 L.Ed.2d at 602 (quoting Payton, supra, 445 U.S. at 590, 100 S.Ct. at 1382, 63 L.Ed.2d at 653).
In State v. Penalber, 386 N.J.Super. 1, 898 A.2d 538 (App.Div.2006), we held that the police were not authorized to enter an open apartment door without a warrant to arrest the person who made an undercover sale of narcotics in that apartment forty-five minutes earlier. We quoted a pertinent observation of the United States Supreme Court: "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." Id. at 11, 898 A.2d 538 (quoting Payton, supra, 445 U.S. at 590, 100 S.Ct. at 1382, 63 L.Ed.2d at 653).
In State v. Lewis, 116 N.J. 477, 479-81, 561 A.2d 1153 (1989), our State Supreme Court considered facts similar to this case where a police officer physically prevented the defendant from closing his door. The police had received information from a reliable informant that defendant was then selling drugs in his apartment. Eight police officers went to the defendant's residence, and after knocking on the door, one put his foot into the doorway to prevent the defendant from closing it. From that location, the officer saw drugs on a table inside the apartment. Id. at 480-81, 561 A.2d 1153. The Court stated:
the "plain view" of the items on the kitchen table occurred after [the officer] used his foot to stop defendant from closing the door. Thus, the officer's observation of the evidence does not advance the State's position unless the police were authorized forcibly to prevent defendant from closing the door, and their subsequent seizure of the items observed depends on the officers' right to make a warrantless entry.
[Id. at 486-87, 561 A.2d 1153.]
Although the Court did not hold explicitly that the officer had no right to prevent the defendant from closing his door, it suppressed the evidence, reasoning that the police could not show exigent circumstances and were required to obtain a warrant before entering the apartment. Id. at 489, 561 A.2d 1153.
In this case, the police entered defendant's home when Sergeant Smith placed her body in the doorway. They needed either a warrant or an exception from the *1074 Fourth Amendment's warrant requirement to do so.[2]

III.
The State has not argued, and the trial court did not conclude, that exigent circumstances authorized the police conduct in this case. The State refers, however, to the trial court's remark that "the police were facing a potentially armed suspect." For completeness, we will address whether exigent circumstances justified the police entry into defendant's home.
The facts here did not involve "hot pursuit" of a suspect into a dwelling, which may apply where the police have probable cause to believe that the suspect has just committed a serious crime or is in possession of evidence that may be destroyed. See United States v. Santana, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); State v. Davis, 204 N.J.Super. 181, 497 A.2d 1284 (App.Div.1985), certif. denied, 104 N.J. 378, 517 A.2d 388 (1986).
In Santana, supra, the police first confronted the defendant as she stood in the open doorway of her house. 427 U.S. at 40, 96 S.Ct. at 2408, 49 L.Ed.2d at 304. As the police displayed their badges and approached, the defendant retreated into the vestibule. The police followed her in and arrested and searched her. Id. at 40-41, 96 S.Ct. at 2408-09, 49 L.Ed.2d at 304. The Court held the police entry was constitutional, reasoning that they had sufficient probable cause to arrest the defendant for selling illegal drugs, the arrest had begun in a public place where the police had a right to be, and they were in "hot pursuit" of evidence they had learned was then in the defendant's possession, namely, marked bills used for the undercover purchase of narcotics from her a few minutes earlier. Id. at 42-43, 96 S.Ct. at 2409-10, 49 L.Ed.2d at 305-06. The Court held that "a suspect may not defeat an arrest which has been set in motion in a public place, and is therefore proper under [United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976)], by the expedient of escaping to a private place." Santana, supra, 427 U.S. at 43, 96 S.Ct. at 2410, 49 L.Ed.2d at 306.
In this case, the police did not have probable cause to arrest defendant as they approached his front door, and they did not first encounter him and "set in motion" a Terry-type detention in a public place. See State v. Nikola, 359 N.J.Super. 573, 821 A.2d 110 (App.Div.), certif. denied, 178 N.J. 30, 834 A.2d 404 (2003). Furthermore, they did not have probable cause to believe that he possessed evidence of criminal activity on his person and, therefore, were not in "hot pursuit" of the recovery of such evidence.
In Nikola, the police first made a lawful Terry stop and detained the defendant in her driveway to investigate whether she was driving while intoxicated. Id. at 584, 821 A.2d 110. They then entered the defendant's garage without a warrant as she went to her car to retrieve credentials. Id. at 577, 821 A.2d 110. We concluded the police did not need a warrant for the *1075 limited further intrusion into the garage. Id. at 586, 821 A.2d 110. Here, the police did not first confront or detain defendant in a public area where they had a right to be; their first encounter was in his own house.
In Welsh v. Wisconsin, 466 U.S. 740, 750, 104 S.Ct. 2091, 2098, 80 L.Ed.2d 732, 743 (1984), the Supreme Court said, "Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." The Court in Welsh rejected a "hot pursuit" justification and found no exigent circumstances to enter the defendant's home and arrest him for driving while intoxicated where the suspect had reached his home on foot shortly after a motor vehicle accident. Id. at 753, 104 S.Ct. at 2099, 80 L.Ed.2d at 745; see also Bolte, supra, 115 N.J. at 597, 560 A.2d 644 (in the absence of probable cause to believe that the defendant had committed a serious offense, police could not show exigent circumstances for warrantless entry of suspect's home).
The State argues the police had reason to suspect defendant was armed because he denied having a gun before the police said anything about a shooting. But defendant said he did not have a gun in response to the police approaching his home in force and ordering him to show his hands. That police command would naturally indicate that the police suspected defendant of being armed. A person subjected to such a police advance and command may arouse suspicion if he does not immediately announce he is unarmed. The police cannot claim exigent circumstances by ordering a suspect to show his hands and then using his response that he is unarmed as evidence that he might in fact be armed. See State v. Hutchins, 116 N.J. 457, 468-73, 561 A.2d 1142 (1989) (surveying cases that address exigent circumstances created by police conduct). Here, the police did not show exigent circumstances dispensing with the requirement that they have a warrant to enter defendant's home.

IV.
Despite the initial unlawful entry, we agree with the trial court's conclusion that defendant did not have a right to resist the police physically, even if they were violating his constitutional rights. See State v. Crawley, 187 N.J. 440, 453-54, 901 A.2d 924, cert. denied, 549 U.S. 1078, 127 S.Ct. 740, 166 L.Ed.2d 563 (2006); State v. Brennan, 344 N.J.Super. 136, 145, 780 A.2d 585 (App.Div.2001), certif. denied, 171 N.J. 43, 791 A.2d 221 (2002); State v. Koonce, 89 N.J.Super. 169, 183-84, 214 A.2d 428 (App.Div.1965).
Based on the evidence at the suppression hearing, the trial court could conclude that the police had probable cause to arrest and charge defendant with assaulting Sergeant Smith when he slammed the door on her. But cf. State v. Stampone, 341 N.J.Super. 247, 254-55, 775 A.2d 193 (App. Div.2001) (defendant's slamming car door and thus threatening injury to police officer's arm did not establish sufficient evidence to convict him on charge of disorderly conduct).
Upon arresting defendant, the police had a right to search his person without a warrant as incident to his arrest. See Chimel v. California, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969); State v. Pena-Flores, 198 N.J. 6, 19, 965 A.2d 114 (2009); State v. Pierce, 136 N.J. 184, 196-97, 642 A.2d 947 (1994). Therefore, the two bags of cocaine found on his person were admissible as the product of a warrantless search incident to *1076 arrest. See State v. Williams, 192 N.J. 1, 18, 926 A.2d 340 (2007).

V.
After the arrest, defendant was placed in a police car and transported to police headquarters. The police then entered the residence a second time without a warrant. The trial court reached no specific conclusion about the right of the police to enter the common hallway a second time and to go upstairs and knock at defendant's apartment door.
The State justifies the second warrantless entry under the community caretaking function of the police. See Cady v. Dombrowski, 413 U.S. 433, 439-48, 93 S.Ct. 2523, 2527-31, 37 L.Ed.2d 706, 713-18 (1973); State v. Bogan, 200 N.J. 61, 73-75, 975 A.2d 377 (2009); State v. Diloreto, 180 N.J. 264, 276, 850 A.2d 1226 (2004); State v. Garbin, 325 N.J.Super. 521, 526-27, 739 A.2d 1016 (App.Div.1999), certif. denied, 164 N.J. 560, 753 A.2d 1153 (2000). The State contends the police were checking on the welfare of Tiffanie Morrison because defendant told them that she was upstairs in the apartment but she had not come out despite the commotion of defendant's arrest in the hallway.
We find insufficient evidence in the record to support a community caretaking exception with respect to the welfare of defendant's family. Nothing in the tip the police had received, or information they developed in their brief investigation, indicated that anyone in defendant's residence needed police caretaking. Morrison's choice not to leave her apartment and child in response to police commotion in the hallway did not demonstrate that she needed the police to check into her well-being inside her own house.
We conclude that the police violated defendant's Fourth Amendment rights a second time after his arrest when they entered the common hallway without a warrant or an exception from the warrant requirement.
Nor were the police authorized to enter defendant's apartment to conduct a sweep for the presence of other persons, at which time they allegedly saw in plain view evidence of drug dealing activity. See Lewis, supra, 116 N.J. at 486, 561 A.2d 1153. The trial court apparently concluded that the entry was valid because Morrison consented. Although the police witnesses testified that Morrison granted permission for them to enter, they did not testify that she was advised of a right to refuse consent before the initial entry into her apartment.
Under the protections recognized in our State constitution against unreasonable search and seizure, N.J. Const., art. I, ¶ 7, Morrison's initial oral consent is not considered voluntary without proof that she knew she had a right to refuse. See State v. Domicz, 188 N.J. 285, 307, 907 A.2d 395 (2006); State v. Johnson, 68 N.J. 349, 353-54, 346 A.2d 66 (1975); State v. Todd, 355 N.J.Super. 132, 138-39, 809 A.2d 818 (App. Div.2002). The State bears the burden of proving her consent was voluntary, State v. Koedatich, 112 N.J. 225, 262, 548 A.2d 939 (1988), cert. denied, 488 U.S. 1017, 109 S.Ct. 813, 102 L.Ed.2d 803 (1989); State v. Chapman, 332 N.J.Super. 452, 466, 753 A.2d 1179 (App.Div.2000), and it did not satisfy that burden with respect to the first police entry into the apartment.
We also reject any suggestion that police observation at the apartment door justified the initial entry and protective sweep because of community caretaking or exigent circumstances. On this record, the whispering the police heard inside the apartment, and the nervousness and fear of Morrison and the child at the door, did not indicate danger from anyone else in *1077 the apartment but rather reaction to the police presence and actions. The trial court did not conclude that the initial entry into the apartment was lawful as part of the police's community caretaking function or because of exigent circumstances. We also reject such a conclusion.
The trial court expressly rejected the State's community caretaking rationale for the later police entry and search of defendant's apartment, almost three hours after defendant was arrested. The court noted that the passage of substantial time refuted any community caretaking reason to enter the home at that time. We agree with that conclusion.

VI.
The trial court concluded, however, that Morrison gave voluntary consent for the police to search the apartment after Sergeant Passarelli returned from police headquarters. In reaching that conclusion, the trial court did not consider the taint of the initial unlawful entries into the home. Also, it did not adequately weigh the coercive effect of the lengthy police intrusion into and seizure of the home.
When Morrison finally signed consent forms at 12:39 p.m., the police had already entered her apartment and conducted an unlawful sweep and plain view search. They had removed her and her child from her home. During the next two and a half hours, police officers remained inside her apartment while she was prohibited from re-entering. The police gave no indication of when their seizure of the home would end and when Morrison and her family might be permitted to return. Under these circumstances, we disagree with the trial court's statement that "in this case there's no evidence that Miss Morrison's will was overborne."
We conclude that the search of the apartment some three hours after defendant had been arrested was a violation of his constitutional right against unlawful search and seizure. It was the fruit of the unconstitutional entries into the hallway and the initial sweep of the apartment, see Lewis, supra, 116 N.J. at 486-87, 561 A.2d 1153; State v. Lashley, 353 N.J.Super. 405, 409-11, 803 A.2d 139 (App.Div.2002), and its "connection with the unlawful search" did not become "`so attenuated as to dissipate the taint,'" Murray v. United States, 487 U.S. 533, 537, 108 S.Ct. 2529, 2533, 101 L.Ed.2d 472, 480 (1988) (quoting Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307, 312 (1939)).

VII.
In sum, we conclude the cocaine seized from defendant's person was admissible in evidence as the product of a warrantless search of defendant incident to arrest, but the evidence seized from the apartment should have been suppressed.
Reversed and remanded to the trial court for further proceedings consistent with our decision.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] In State v. Mai, 202 N.J. 12, 993 A.2d 1216 (2010), the Court held that the police did not violate the defendant's constitutional rights by opening the door of a vehicle while ordering passengers out. The Court concluded that the act of opening the vehicle door was not a separate intrusion upon the defendant's rights against a warrantless search and seizure where, in accordance with State v. Smith, 134 N.J. 599, 637 A.2d 158 (1994), the police had reasonable articulable suspicion to make a motor vehicle stop and to order the passengers to alight. See Mai, supra, 202 N.J. at 15-16, 21-22, 993 A.2d 1216. The holding and reasoning of Mai do not apply to the facts of this case and do not affect our decision.