**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0750-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RANDY P. FERNANDEZ,

     Defendant-Appellant.

_____

Argued January 25, 2019 – Decided July 15, 2019

Before Judges Simonelli, Whipple and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 15-10-0888.

Alyssa A. Aiello, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Joshua D. Sanders, Assistant Deputy Public Defender, of counsel and on the brief).

John K. McNamara, Jr., Chief Assistant Prosecutor, argued the cause for respondent (Frederic M. Knapp, Morris County Prosecutor, attorney; Erin Smith Wisloff, Supervising Assistant Prosecutor, on the brief).

PER CURIAM

Following the denial of his motion to suppress statements made to the police and items seized from his apartment, defendant Randy P. Fernandez pled guilty to three counts of first-degree robbery, N.J.S.A. 2C:15-1(a)(2). The trial court sentenced defendant in accordance with the plea agreement to a thirteen-year term of imprisonment with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

On appeal, defendant raises the following contentions:

> POINT I
>
> BOTH THE EVIDENCE AND THE STATEMENTS OBTAINED FROM [DEFENDANT] MUST BE SUPPRESSED BECAUSE THEY ARE THE RESULT OF THE WARRANTLESS ENTRY OF HIS HOME.
>
> POINT II
>
> [DEFENDANT'S] SENTENCE IS EXCESSIVE, UNDULY PUNITIVE, AND MUST BE REDUCED.

We reject these contentions and affirm.

I.

At 1:58 p.m. on January 6, 2015, detectives Michael Pier and William McCarthy of the Dover Police Department responded to a holdup alarm at a local delicatessen. Prior to this robbery, the delicatessen had been robbed three times

in November 2014. During the course of investigating the prior robberies, a confidential informant advised the police that defendant committed them. The detectives had defendant's motor vehicle registration, which bore his address, apartment number and photograph, and immediately went to the apartment building. On route, the detectives received additional information that the perpetrator was wearing all black clothing, had brandished a handgun, and had exited the delicatessen, heading toward Beach Street, which intersects with the street on which defendant lived.

The detectives arrived at defendant's apartment building, which contained approximately six apartments. They went to the front door, which was locked, and started ringing doorbells and knocking on the door. Someone in the building unlocked the front door. The detectives entered into the foyer where they saw mailboxes. The mailbox for apartment number three bore defendant's last name.

The detectives went to defendant's apartment and knocked on the door. When defendant opened the door, the detectives saw he was sweating, out of breath and nervous. They asked defendant if they could enter his apartment and defendant consented. Once inside, the detectives advised defendant they had information that he committed the robberies at the delicatessen and wanted to search his apartment for evidence. Defendant consented to the search of his

3

apartment. Pier advised defendant he had the right to refuse to give consent and could terminate the search at any time. Defendant again consented to the search of his apartment. The detectives searched the apartment, found nothing connecting defendant to the robberies and left.

While standing outside defendant's apartment door discussing the case, the detectives heard rummaging noises coming from the area of the attic inside defendant's apartment. They knocked on defendant's door and when defendant opened it, they asked about the noise and asked if they could re-enter the apartment to search it again. Defendant was initially hesitant and suggested the detectives get a search warrant, to which they agreed, but then consented to the detectives re-entering his apartment without a warrant and to conduct a second search. The detectives again advised defendant he had the right to refuse consent and could terminate the search at any time. Defendant did not refuse consent or terminate the search. McCarthy then searched the attic and found a jacket, pants, sunglasses, gloves, boots and a gun.

The detectives arrested defendant and advised him of his Miranda[1] rights. Defendant then admitted he committed the armed robberies of the delicatessen.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-0750-17T1

He was transported to police headquarters, where, prior to his videotaped interrogation, he was again advised of his <u>Miranda</u> rights and signed and initialed the <u>Miranda</u> form. Defendant also signed a consent to search form and acknowledged he had authorized the search of his apartment. Defendant told the detectives that he placed the money from that day's robbery in a shoebox next to a stack of computer monitors and described where they would find the money in the attic inside his apartment. Defendant confirmed that the detectives would be able to return to his apartment to retrieve the money and that his father, who also resided in the apartment, would allow them access to the apartment. The detectives returned to defendant's apartment and spoke to his father, who consented to a search of the attic and signed a consent to search form. The police searched the attic and found $227 in a shoebox next to computer monitors.

Defendant filed a motion to suppress the evidence seized from his apartment, arguing he did not consent to the search of his apartment. Following a hearing, at which Pier, McCarthy and defendant testified, the motion judge issued a comprehensive written opinion, dated October 12, 2016. The judge made credibility determinations and detailed factual findings, and concluded defendant freely and voluntarily consented to the first two searches of his

apartment, and his father freely and voluntarily consented to the third search, including the search of the attic.

## II.

On appeal, defendant did not address the validity of the consent to search his apartment or the judge's rulings on this issue. Thus, the issue is deemed waived. Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2019). Rather, defendant argues for the first time on appeal that the detectives unlawfully entered the foyer of his apartment building by ringing doorbells of neighbors in order to gain entry.

"Generally, 'the points of divergence developed in proceedings before a trial court define the metes and bounds of appellate review.'" State v. Witt, 223 N.J. 409, 419 (2015) (quoting State v. Robinson, 200 N.J. 1, 19 (2009)). "Parties must make known their positions at the suppression hearing so that the trial court can rule on the issues before it." Ibid. "For sound jurisprudential reasons, with few exceptions, 'our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available.'" Ibid. (quoting Robinson, 200 N.J. at 20).

A-0750-17T1

Here, the trial court was never called on to rule on the legality of the detectives' entry into the apartment building and the State was deprived of the opportunity to establish a more robust record that might have resolved the issue. Under the circumstances, we should decline to entertain the newly-raised issue. However, we discern nothing unlawful about the detectives' entry into the foyer of defendant's apartment building.

The detectives had information that defendant committed the armed robberies and knew he lived in apartment three of the apartment building. They went to the apartment building to investigate. Their entry into the foyer was proper, as defendant had no reasonable expectation of privacy in that common area. Case law supports this conclusion. See State v. Brown, 282 N.J. Super. 538, 547 (App. Div. 1995) (holding a tenant does not have a reasonable expectation of privacy in the common areas of an apartment building); State v. Ball, 219 N.J. Super. 501, 506-07 (App. Div. 1987) (holding one does not have a reasonable expectation of privacy in areas that are also used by other occupants); State v. Jordan, 115 N.J. Super. 73, 75 (App. Div. 1971) (noting that one does not have a reasonable expectation of privacy in the common hallways of apartment buildings). In addition, the police do not need a warrant to approach an apartment building and knock on the door, State v. Craft, 425 N.J.

Super. 546, 552 (App. Div. 2012), and may enter the common passageway of a multi-family dwelling in furtherance of an investigation, State v. Smith, 37 N.J. 481, 496 (1962). The fact that the detectives gained entry to the foyer area by ringing the doorbells of other tenants does not change the analysis, as defendant did not have a right to exclude the police from the building's common areas and the detectives had the right to enter the foyer in furtherance of their investigation of the armed robberies.

State v. Jefferson, 413 N.J. Super. 344 (App. Div. 2010), on which defendant relies, does not change this result. There, the police were investigating a citizen's tip of shots fired and located the suspected car of the alleged shooter in front of the defendant's residence, which was a multi-family dwelling with a common hallway. Id. at 349-50. The police forcibly entered the front door as the defendant tried to keep them out. Id. at 350-51. A significant distinguishing factor of Jefferson and the case here is that there was no forced entry into the foyer area; rather, the detectives gained entry by a tenant who had access to the apartment building, including the foyer. Accordingly, we discern no reason to reverse.

A-0750-17T1

III.

At sentencing, the court found aggravating factor three, "[t]he risk that the defendant will commit another offense," N.J.S.A. 2C:44-1(a)(3); factor six, "[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted," N.J.S.A. 2C:44-1(a)(6); and factor nine, "[t]he need for deterring the defendant and others from violating the law," N.J.S.A. 2C:44-1(a)(9). The court also found mitigating factor eleven, "[t]he imprisonment of the defendant would entail excessive hardship to himself or his dependents," N.J.S.A. 2C:44-1(b)(11). The court provided reasons for each of these findings and imposed three concurrent thirteen-year terms of imprisonment subject to NERA. Defendant argues his sentence is excessive and the court added extra time because he filed pre-trial motions and decided to go to trial.

We review a judge's sentencing decision under an abuse of discretion standard. State v. Fuentes, 217 N.J. 57, 70 (2014). As directed by the Court, we must determine whether:

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the

9

sentence clearly unreasonable so as to shock the judicial conscience."

[Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

We have considered defendant's argument in light of the record and applicable legal principles and conclude it is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We affirm substantially for the reasons the court expressed at sentencing. We are satisfied that the court did not violate the sentencing guidelines or add extra time because defendant filed pre-trial motions and decided to go to trial, and the record amply supports the judge's findings on aggravating and mitigating factors. The sentence is clearly reasonable and does not shock our judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0750-17T1