**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0234-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ANTHONY M. SIMPSON,
a/k/a ANTHONY P. MILTON,
and ANTHONY MILTON,

    Defendant-Appellant.

_____

Submitted January 5, 2022 – Decided February 7, 2022

Before Judges Whipple and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 16-03-0033.

Joseph E. Krakora, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Steven A. Yomtov, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Anthony M. Simpson appeals from a June 25, 2019 judgment of conviction and sentence for various drug and weapons offenses. We affirm his conviction but remand to correct the judgment of conviction.

Defendant raises the following issues on appeal:

POINT I:

THE CONVICTIONS MUST BE REVERSED BECAUSE THE TRIAL WAS IRREPARABLY TAINTED BY THE IMPROPER ADMISSION OF AN ASSAULT RIFLE, LARGE CAPACITY MAGAZINES, AND $10,000 IN CASH. U.S. Const., Amend. IV; N.J. Const., Art. 1, Par. 7.

POINT II:

THE AGGREGATE [THIRTY-ONE]-YEAR SENTENCE WITH [EIGHTEEN] YEARS OF PAROLE INELIGIBILITY WAS MANIFESTLY EXCESSIVE FOR THIS NON-VIOLENT OFFENDER.

On March 13, 2015, the New Jersey State Police arrested defendant at a traffic stop for an outstanding warrant. Defendant had been under investigation for distribution of heroin in Ocean County for several months. Officers executed a search warrant of 265 Woodlake Manor Drive in Lakewood on suspicion of defendant's drug activities. There, officers discovered a digital scale, plastic bags, various amounts of marijuana, cocaine,

A-0234-19

and heroin, ammunition, and weapons. Officers also discovered a business card for the Brick Motor Inn, in Bricktown. Defendant was previously observed traveling between 265 Woodlake Manor Drive and the Brick Motor Inn and stayed at both locations.

Following the search of 265 Woodlake Manor Drive, officers decided to conduct a "knock and talk" at Room 108 at the Brick Motor Inn. Defendant's wife, Deshannon Simpson, and her two children had been staying in Room 108, which defendant visited daily and paid for.

Room 108 was on the first floor and had an exterior entrance to the parking lot. From the public walkway, officers observed through the window a gun bag protruding from underneath a pillow on the bed. Officers knocked on the door, and no one answered. They stayed outside for at least five minutes and saw no individuals inside the room, which had a bathroom in the rear. Because they previously observed Ms. Simpson and two children, the officers believed that other individuals could have been inside the room. The officers also believed that someone at the motel could have been alerted about the search at 265 Woodlake Manor Drive. Thus, the officers sought to enter the room to ensure that nobody was inside and that no one could access a gun in the gun bag, which may have posed a risk to the police and the general public.

A-0234-19

The police obtained a card from the hotel manager to gain access to the room. The officers entered the room to secure any potential weapons. The officers conducted a "protective sweep," in which they checked whether anyone was inside the room. They did not search the room. They opened the gun case, observed an AK-47 type assault weapon, put it back, and exited the room without conducting a further search and then sought a search warrant for Room 108.

While they were beginning the process of obtaining a search warrant, Ms. Simpson arrived and signed a Consent to Search form, so the officers abandoned the application for the search warrant. Officers then searched the room. Officers found the AK-47 style semiautomatic pistol inside a gun bag, Red Army 7.52 ammunition, a Berretta nine-millimeter Storm semi-automatic handgun, and cash. The Berretta handgun was on top of a television.

On March 4, 2016, a state grand jury returned an indictment charging defendant with twenty-one offenses. These offenses included: first-degree possession with intent to distribute a controlled dangerous substance (CDS), cocaine, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(1); second-degree possession with intent to distribute CDS, heroin, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(2); third-degree possession with intent to distribute CDS,

marijuana, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(11); third-degree possession of a CDS, cocaine, N.J.S.A. 2C:35-10(a)(1); third-degree possession of CDS, heroin, N.J.S.A. 2C:35-10(a)(1); fourth-degree possession of CDS, marijuana, N.J.S.A. 2C:35-10(a)(3); second-degree possession of a firearm, a nine-millimeter Glock semiautomatic pistol, a .327 Magnum Taurus revolver, and a .357 Magnum Herman Weihrauch revolver, during the commission of a drug offense, N.J.S.A. 2C:39-4.1(a) and N.J.S.A. 2C:35-5; fourth-degree possession with intent to distribute drug paraphernalia, N.J.S.A. 2C:36-3; three counts of second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) and N.J.S.A. 2C:58-4; fourth-degree possession of prohibited weapons and devices, hollow-nose bullets, N.J.S.A. 2C:39-3(f); three counts of third-degree receiving stolen property, three firearms, N.J.S.A. 2C:20-7; third-degree unlawful possession of an assault firearm, a 7.62 X 39mm Romarm semiautomatic pistol (AK-47), N.J.S.A. 2C:39-5(f); second-degree unlawful possession of a handgun, a nine-millimeter Beretta semiautomatic pistol, N.J.S.A. 2C:39-5(b) and N.J.S.A. 2C:58-4; fourth-degree possession of prohibited weapons and devices, a large-capacity ammunition magazine, N.J.S.A. 2C:39-3(j); third-degree unlawful transportation of an assault firearm, N.J.S.A. 2C:39-9(g); fourth-degree unlawful transportation of

5

a firearm N.J.S.A. 2C:39-9(d); and second-degree certain persons not to have weapons, five firearms, N.J.S.A. 2C:39-7.

On May 12, 2017, the trial court denied defendant's motion to suppress evidence seized because of a warrantless search of Room 108 of the Brick Motor Inn on March 13, 2015. From February 5 to 13, 2019, the court held a bench trial. Ms. Simpson testified that she owned the guns found in Room 108. After she purchased the guns and ammunition in Georgia, she and defendant drove to New Jersey with these items in the car. Defendant showed her how to load the Beretta semiautomatic pistol.

The court found defendant guilty of possession and possession with intent to distribute cocaine, heroin, and marijuana. The court also found defendant guilty of possession of the weapons found at 265 Woodlake Manor Drive, unlawful possession of the Beretta semiautomatic pistol, as well as for possessing prohibited devices, the ammunition associated with the weapons. The court further found defendant guilty of possession of a firearm while in possession of or distributing or attempting to distribute CDS, unlawfully possessing a weapon as a convicted felon, and for receiving stolen weapons found at 265 Woodlake Manor Drive.

6

The court sentenced defendant a twenty-six-year term of imprisonment, with thirteen years of parole ineligibility, on the first-degree conviction of possession with intent to distribute CDS; a mandatory consecutive term of five years imprisonment, with five years of parole ineligibility, on the conviction of second-degree possession of a firearm during the commission of a CDS offense; and a concurrent five-year prison term, with five years of parole ineligibility, on the second-degree certain-persons conviction. The remaining counts were merged. The court found aggravating factors three, six and nine and mitigating factor eleven that imprisonment of the defendant would entail excessive hardship to himself or his dependents. Despite giving substantial weight to the mitigating factor, the court found the aggravating factors substantially outweigh the sole mitigating factor. This appeal followed.

We defer to a trial court's evidentiary ruling absent an abuse of discretion. State v. Garcia, 245 N.J. 412, 430 (2021). We review the trial court's evidentiary rulings "under the abuse of discretion standard because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." State v. Prall, 231 N.J. 567, 580 (2018) (quoting Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)). Under that deferential standard, appellate courts "review a

trial court's evidentiary ruling only for a 'clear error in judgment.'" State v. Medina, 242 N.J. 397, 412 (2020) (quoting State v. Scott, 229 N.J. 469, 479 (2017)).

Defendant argues that the trial court erred in admitting evidence of the assault rifle, ammunition, and cash because law enforcement conducted an unlawful entry and subsequent search of Room 108. Defendant contends that the trial court should have suppressed the tainted evidence recovered via the unlawful entry and search of Room 108. Defendant also argues that admitting this evidence was overwhelmingly prejudicial.

Having reviewed the record, we conclude the trial court properly admitted the evidence under the inevitable discovery doctrine. The exclusionary rule extends to evidence that is the "fruit" of unlawful police conduct. See Wong Sun v. United States, 371 U.S. 471, 485-86 (1963). However, under the inevitable discovery doctrine,

> even though evidence may have been obtained as a result of unlawful governmental activity, if the prosecution can show that 'the information ultimately or inevitably would have been discovered by lawful means . . . the deterrence rationale [of the exclusionary rule] has so little basis that the evidence should be received.'

> [State v. Finesmith, 406 N.J. Super. 510, 522 (App. Div. 2009) (quoting Nix v. Williams, 467 U.S. 431, 444 (1984)).]

To satisfy the inevitable discovery exception, the State must

> show that (1) proper, normal and specific investigatory procedures would have been pursued in order to complete the investigation of the case; (2) under all of the surrounding relevant circumstances the pursuit of those procedures would have inevitably resulted in the discovery of the evidence; and (3) the discovery of the evidence through the use of such procedures would have occurred wholly independently of the discovery of such evidence by unlawful means.
>
> [State v. Sugar, 100 N.J. 214, 238 (1985).]

"The State must show by clear and convincing evidence that had the illegality not occurred, it would have pursued established investigatory procedures that would have inevitably resulted in the discovery of the controverted evidence, wholly apart from its unlawful acquisition." Id. at 240.

Here, the court noted that officers were investigating a crime, sought to speak to individuals in Room 108, which the defendant was observed visiting, and saw a gun case in plain view. After conducting a protective sweep, they began the process for obtaining a search warrant. Thus, the court found "clearly and convincingly that the warrant would have been obtained and the search executed resulting in the seizure of guns, ammunition, and money."

9

Defendant argues that the State failed to meet the third <u>Sugar</u> prong in which the State must show that "the discovery of the evidence through the use of such procedures would have occurred wholly independently of the discovery of such evidence by unlawful means." 100 N.J. at 238. Specifically, defendant argues that officers would not have obtained a search warrant because officers only discovered the assault rifle after unlawfully entering. Defendant cites decisions that upheld the admission of evidence that was inevitably discovered via an independent source. <u>See e.g.</u>, <u>State v. Sugar</u>, 108 N.J. 151 (1987) (upholding the application of the inevitable discovery doctrine to the admission of a body buried in a shallow grave in the backyard of a house to which the defendant's friends had unrestricted access).

Defendant's arguments are unpersuasive. Here, officers used ordinary investigative tactics when they arrived at Room 108 and lawfully observed the gun case from a public area. The discovery of this evidence occurred wholly independently from the officers' entry. <u>Sugar</u>, 100 N.J. at 238. Thus, even if the officers did not enter, they would have obtained a lawful search warrant based on probable cause, which would have inevitably led to the discovery of the weapons, ammunition, and cash. Thus, we affirm the conviction on that basis.

A-0234-19

We disagree with the trial court's conclusion the evidence was admissible under the exigent circumstances and plain view exceptions to the rule against warrantless searches. The United States Constitution and the New Jersey Constitution forbid warrantless searches of homes except under certain circumstances. Kyllo v. United States, 533 U.S. 27, 31 (2001); State v. Davila, 203 N.J. 97, 111-12 (2010). "[A] warrantless search of a suspect's [hotel] room is unreasonable and improper unless it falls within the scope of an exception to the general rule requiring the issuance of a search warrant." State v. Rose, 357 N.J. Super. 100, 103 (2003).

Here, exigent circumstances did not supply the right to enter. "The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." State v. Hutchins, 116 N.J. 457, 464 (1989) (quoting Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 298-299 (1967)). "[E]xigent circumstances will be present when inaction due to the time needed to obtain a warrant will create a substantial likelihood that the police or members of the public will be exposed to physical danger or that evidence will be destroyed or removed from the scene." Id. at 553.

A-0234-19

Moreover, a protective sweep was not permissible. Our Supreme Court

recently held:

> First, when an arrest occurs outside a home, the police may not enter the dwelling or conduct a protective sweep in the absence of a reasonable and articulable suspicion that a person or persons are present inside and pose an imminent threat to the officers' safety. . . . Entering a home to conduct a protective sweep when an arrest is made outside a dwelling should be the rare circumstance, in light of the special constitutional protections afforded the home. Nevertheless, when objective facts provide the police with a reasonable and articulable suspicion that their lives may be placed in imminent danger by a person or persons inside the home, officers will be justified in entering the dwelling to carry out a protective sweep to safeguard their lives.
>
> Second, this sensible balancing of the fundamental right to privacy in one's home and the compelling interest in officer safety will depend on an objective assessment of the particular circumstances in each case, such as the manner of the arrest, the distance of the arrest from the home, the reasonableness of the officers' suspicion that persons were in the dwelling and likely to launch an imminent attack, and any other relevant factors. A self-created exigency by the police cannot justify entry into the home or a protective sweep.
>
> [State v. Radel, __ N.J. __ (2022) (slip. op. at 4-5) (citations omitted).]

Although officers previously observed defendant traveling between 265

Woodlake Manor Drive and the motel, defendant was already arrested when

police arrived at the hotel. The officers arrived at the motel shortly after conducting a search of 265 Woodlake Manor Drive, where they found drugs and weapons. When the officers stood in a public area outside of Room 108, they saw the gun case in plain view. Thus, the officers could have reasonably believed that additional weapons were stored in Room 108 and could be used by someone hiding in the room to harm the officers or other people. However, the police were not authorized to carry out a protective sweep because police had no "reasonable and articulable suspicion that their lives may be placed in imminent danger by a person or persons inside the" room. Ibid. Police saw nobody inside the room. At least six officers stood guard at the room's only door. Defendant's wife's car that police surveilled was not in the parking lot. Once the police determined that no one was inside who might access the suspected weapon, the exigency that justified the incursion dissipated. The ensuing protective sweep and search was not justified by exigent circumstances.

In addition, because no exigent circumstances permitted the warrantless entry and search, the plain view exception did not apply. Where an item is in an officer's plain view, a warrantless search is valid. State v. Bruzzese, 94 N.J. 210, 235-36 (1983), certif. denied, 465 U.S. 1030 (1984). The plain view

13

exception has two requirements.  State v. Gonzales, 227 N.J. 77, 82 (2016).

First, the officer must lawfully be in the viewing area.  Ibid.  Second, it must

be "immediately apparent" to the officer that the item is evidence of a crime,

contraband, or otherwise the type of item subject to seizure.  Ibid.  The plain

view doctrine, however, will not apply when the officer has no right to enter a

private residence.  See State v. Lewis, 116 N.J. 477 (1989).  See also State v.

Wright, 221 N.J. 456, 478 (2015); State v. Earls, 214 N.J. 564, 592 (2013);

State v. Jefferson, 413 N.J. Super. 344, 360-362 (App. Div. 2010); State v.

Johnson, 171 N.J. 192 (2002).  Here, because the officers had no right to enter

the hotel room, the plain view doctrine did not apply.

Finally, admission of the evidence was not overwhelmingly prejudicial.

Nothing in the record supports the conclusion that the admission of the

evidence unduly prejudiced the trial judge.  After carefully considering and

weighing all the evidence, the trial judge found defendant not guilty of

unlawful possession of the AK-47 and ammunition and of unlawful

transportation of the AK-47 and the Beretta handgun.  The trial judge found

defendant guilty only of unlawful possession of the Beretta handgun because

the judge found Ms. Simpson's testimony that defendant showed her how to

load the gun credible.

We reject most of defendant's arguments regarding the judge's findings concerning the imposition of sentence. Our review of a sentence is limited. State v. Miller, 205 N.J. 109, 127 (2011). We review a judge's sentencing decision under an abuse of discretion standard. State v. Fuentes, 217 N.J. 57, 70 (2014). The court must determine whether (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience. Ibid. (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

We are persuaded that the trial court erred in imposing a five-year parole disqualifier on the second-degree possession of a firearm while committing a drug offense (N.J.S.A. 2C:39-4.1(a)), but did not err in imposing a five-year parole disqualifier for second-degree certain persons not to have weapons. The court properly imposed the latter parole disqualifier pursuant to N.J.S.A. 2C:39-7(b)(1), which provides, in pertinent part: "[t]he term of imprisonment shall include the imposition of a minimum term, which shall be fixed at five years, during which the defendant shall be ineligible for parole." However, the Graves Act, N.J.S.A. 2C:43-6(c), applies to defendant's conviction under

N.J.S.A. 2C:39-4.1(a). N.J.S.A. 2C:43-6(c) provides, in pertinent part: "[t]he minimum term shall be fixed at one-half of the sentence imposed by the court or [forty-two] months, whichever is greater . . . during which the defendant shall be ineligible for parole." Thus, the court erred in imposing a mandatory consecutive term of five years imprisonment, with five years of parole ineligibility, on the conviction under N.J.S.A. 2C:39-4.1(a). Therefore, we remand for correction.

Affirmed in part, remanded for resentencing consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION